McNear v. Williamson.

## McNEAR v. WILLIAMSON et al., Appellants.

### Division One, January 13, 1902.

1. **Deed to Delay Creditors:** EQUITABLE RELIEF. Where defendant's purpose in making a deed, which is the basis of plaintiff's ejectment, was to put his property beyond the reach of his creditors, an equity court is usually disposed to leave the parties where it found them, and will interfere only to prevent a greater wrong.

2. ————: ————: REPRESENTATION AS TO INDEBTEDNESS. In such case, if defendant is in as good position to know the amount of his own indebtedness as the grantee in the deed made to 'delay defendant's creditors, false statements by the grantee as to the amount thereof is no ground for relief against the deed.

3. ————: ————: UNDELIVERED DEED. Relief against an undelivered deed is usually an action at law, for until delivered there is no deed.

4. ————: ————: EJECTMENT: ANNOUNCEMENT. Where there is interposed in an ejectment a legal defense that the deed on which plaintiff seeks to recover was never delivered and an equitable defense that it was drawn up in pursuance to plaintiff's fraudulent representations, the trial court on finding that the equity branch of the case is not sustained should so announce, and then proceed to try the issues at law.

5. ————: DELIVERY: CONFLICT OF EVIDENCE: APPELLATE PRACTICE. Where the issue is one at law, for instance, as to whether or not the deed, which is the basis for the action, was delivered, and there was evidence tending to support the trial court's finding, the appellate court will interfere when it appears that that issue was lost sight of at the trial or was not tried as it should have been.

6. ————: ————: INTENT: TO MINOR. Before there can be said to have been a delivery, the act must have been with the intent on the part of the grantor, to divest himself of title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed. And if this intention is present with all parties there

is such a delivery as to pass the title, although one of the grantees was a minor.

7. ———: ———: ———: TO DELAY CREDITORS: CASE STATED. A widow having a life estate in land, which she rented for $584 a year, had a deed made to her son-in-law and her minor son for a consideration of $900, the purpose being to delay her creditors. After signing it she handed it to the minor son, instead of the man, who did not interpose to have it recorded. The minor took it with him to his mother's house as directed by her, placed it in her bureau drawer, where it was up to the time of the trial. Afterwards she adjusted her indebtedness with her creditors, and returned the $644, which the grantees had given her, to the son-in-law, who received it and immediately applied it on the $900 note which the grantees had made, and afterwards with his knowledge she paid the balance of this note. No delivery of the premises or demand for possession was ever made. *Held*, that there was no delivery of the deed.

8. ———: ———: TO MINOR: PRESUMPTION. The presumption of acceptance by a minor of a deed for his benefit is only prima facie, and may be overcome by a showing that he wanted the life estate deeded to himself and his sister, rather than to himself and her husband.

9. ———: ———: ———: BENEFIT AS A MATTER OF LAW. Nor will the court say, as a matter of law, that a deed for an apparently inadequate consideration, of his mother's life estate to a minor and another jointly, is unquestionably for his benefit.

10. Necessary Parties to Suit: EJECTMENT: CO-TENANT. A joint grantee in a deed is not a necessary party to a suit in ejectment by the other to recover the premises. The plaintiff in such case may sue for and recover his interest independent of the other grantee.

Appeal from Chariton Circuit Court.—*Hon. W. W. Rucker*, Judge.

REVERSED AND REMANDED.

*Fry & Clay* and *H. S. Booth* for appellants.

(1) The defense of fraud set up in the answer converts the action in ejectment into a suit in equity. Lewis v. Rodes, 150 Mo. 498; Ridgway v. Herbert, 150 Mo. 606. In such

an action with an equitable defense, the appellate court will weigh all the evidence and review the verdict. Ridgway v. Herbert, supra. The entire evidence is preserved and presented here, and appellants insist that on the weight of evidence they are entitled to a decree. (2) The delivery of a deed is a question of the intention of the parties and whether or not it has been delivered is a mixed question of law and fact. Powell v. Banks, 146 Mo. 620; Shanklin v. McCracken, 151 Mo. 587. "To constitute a valid delivery, the dominion over the instrument must have passed from the grantor with the intent that it shall pass to the grantee provided the latter accepts." Tyler v. Hall, 106 Mo. 322. Whether a deed has been delivered or not is a question of fact to be determined from the evidence, and the burden is on the plaintiff to establish that fact. It is a question of intention to be gathered from all the facts before the court in each respective case. Tyler v. Hall, 106 Mo. 321; Sneathen v. Sneathen, 104 Mo. 209; 2 Greenleaf on Ev., sec. 297; Ebersole v. Rankin, 102 Mo. 488; Kingman & Co. v. Cornell, 150 Mo. 282; Shanklin v. McCracken, 151 Mo. 595; Cravens v. Rossiter, 116 Mo. 343; Turner v. Carpenter, 83 Mo. 336. (3) When a grantor acts under circumstances of oppression, imposition or undue influence, equity will grant relief, for the purpose of preventing the perpetration of a fraud by the grantee. In such case the parties although *in delicto* are not *in pari delicto*, and a remedy is given on the ground of *mala fides* in the grantee and to prevent an imposition. Bump on Fraudulent Conveyances (4 Ed.), sec. 436; Poston v. Balch, 69 Mo. 115. When a grantor is induced by the fraud and deception of the grantee to execute a conveyance to the grantee's interest and contrary to grantor's intention, equity will set it aside. Goetz v. Flanders, 118 Mo. 342; Ingenfritz v. Ingenfritz, 116 Mo. 437; Wait on fraudulent Conv. (3 Ed.), sec. 399; Holliway v. Holliway, 77 Mo. 392. The acknowledged rule of this court requires less direct proof in the establishment of a charge of

fraud in equity than at law.    In equity it may be inferred
from the facts and circumstances of the transaction.    King v.
Moon, 42 Mo. 555; Massey v. Young, 73 Mo. 273.    (4)
Plaintiff is estopped from claiming title under the deed in
question.    Mary E. Jennings, the grantor, paid all the pur-
chase money back.    The plaintiff received the purchase money
and applied it on the note, knowing she held and refused to
deliver the deed.    Plaintiff admitted to Arthur Jennings, his
mother and witness Johnson that the deed had not been de-
livered and he did not claim the land.    After that, on March
1, he tried to rent the land of the grantor.    It was a rescission
of the negotiations between the parties.    Potter v. Adams,
125 Mo. 124; Winfrey v. Gallatin, 72 Mo. App. 191.

*C. B. Sebastian* and *J. H. Cupp* for respondent.

(1)    Appellants' contention, that the answer converts the
action in ejectment into a suit in equity, which warrants a re-
view of the evidence, carries with it the admission of the facts
constituting plaintiff's legal cause of action; that the deed in
controversy was signed, acknowledged and delivered and leaves
only for consideration the question of fraud set up in the
answer.    (2)    But if the court, in considering the case, should
review the evidence upon the question of the delivering of the
deed, then we insist that the finding of the learned judge who
tried the case, saw the witnesses and their manner of testifying,
is fully sustained by the weight of the evidence, and all the
facts and circumstances connected with the case.    The evi-
dence is conflicting and the finding depended upon the
credibility of the oral testimony.    Under such circum-
stances, unless this court is fully satisfied that the find-
ing of the trial court is against the weight of the evi-
dence and without sufficient evidence to sustain it, it is not
warranted in reversing it.    Short v. Taylor, 137 Mo. 517.
(3)    Arthur Jennings, being a minor, and the deed being in

his favor, the acceptance is presumed. Standiford v. Standiford, 97 Mo. 231. (4) If, as appellants contend, the deed was made to defeat the Bank of Centralia in the collection of its debt, then they can not complain and take advantage of their own wrongful act. A court of equity will not interfere, but leave them where they have placed themselves. (5) The answer does not set up the plea of estoppel, and that question was not before the trial court and should not be considered here; but if the court should consider it, appellants' contention is not supported by the evidence.

VALLIANT, J.—This is an action in ejectment for land in Boone county. The real parties in interest are the plaintiff, McNear, and the defendant, Mary E. Williamson. The two other defendants are the husband of Mrs. Williamson and her son, Arthur Jennings, who at the commencement of this suit was a minor, and who, the petition avers, is equally interested with the plaintiff in the subject sued for, but refuses to become plaintiff, and is therefore made defendant under section 1994, Revised Statutes 1889 (sec. 544, R. S. 1899).

Mrs. Williamson was the owner of a life estate in the land, the remainder in fee vesting in her two children, a daughter who is the wife of the plaintiff, and the son above mentioned. The case turns on the question as to the validity of a document alleged to be a deed executed by Mrs. Williamson, February 14, 1898, purporting to convey her life estate to her son and the plaintiff, her son-in-law.

In her answer Mrs. Williamson says that the deed was never delivered and for an equitable defense she says that the plaintiff and his father falsely and fraudulently represented to her that she was indebted to the Centralia Bank in the sum of $5,000, when in fact she did not owe that bank more than $3,000, and that the bank was going to institute a suit by attachment against her, and that by that means they induced her to believe that in order to save her property from attach-

ment and forced sale, she ought to convey it to the plaintiff and her son, and that being at the time in bad health and nervous, and confiding in the representations so made, she yielded to the suggestion and signed and acknowledged the deed, but never delivered it; that she afterwards discovered that the representations were false and she made a satisfactory adjustment of her affairs with the bank and still retains the deed in her possession; that there was no consideration for the deed. The son, Arthur Jennings, makes no claim under it.

The evidence is conflicting on some points, presently noted, but the following facts appear without dispute:

In December, 1897, the defendant, who is now Mrs. Williamson, was a widow, Mrs. Jennings, and owned a life estate in the land in suit, the fee in remainder being owned by her daughter and son, the son, Arthur Jennings, being then a minor and a student at the University at Columbia. On December 28, 1897, the plaintiff, McNear, married the daughter of Mrs. Jennings and made his home in her house. In February, 1898, Mrs. Jennings was indebted to the Centralia Bank in a considerable sum, the exact amount of which she seemed not to know, but apprehended it might be as much as $5,000 and also apprehended that bank would press a settlement which would be disastrous to her. In that state of mind on February 14, 1898, she signed and acknowledged the document in controversy, which purports to be a quitclaim deed of her life estate, to her son, Arthur, and her son-in-law, McNear, for the consideration of $900. This deed (we will call it a deed for convenience) was drawn in a lawyer's office in Centralia, and while it was being written the plaintiff, McNear, and his father and Arthur Jennings went to the bank and executed their joint note for $900, for which the bank gave them a note for $256, which it held, on which Mrs. Jennings was liable, and $644 in money; they then returned to the lawyer's office, and gave the note and money to Mrs. Jennings, and she signed and acknowledged the deed and handed it to her son, Arthur,

who took it to her home and put it in her bureau drawer, and she has had it in her possession ever since.

As soon as the transaction just mentioned was concluded, Mrs. Jennings went from the lawyer's office to the Centralia Bank and then discovered that she only owed the Bank about $3,000, and she then made a satisfactory adjustment of the indebtedness with the cashier. Nine days afterwards, February 23, she returned to the plaintiff.the $644 that had been given to her at the lawyer's office, and he at once took it to the bank and paid it on the $900 note, above mentioned, and Mrs. Jennings shortly afterwards paid the bank the balance of that note. On March 8, 1898, Mrs. Jennings married her present husband, Williamson, and shortly after that event the plaintiff and his wife moved away from her house.

The property sued for consists of a farm in Boone county, and a house in Centralia. The rental value of the farm is $500 a year and of the house is $7 per month.

The points on which the testimony is' conflicting relate chiefly to the question of delivery of the deed, and to the character of the act of returning the $644 to the plaintiff, that is, whether it was handed to him to pay on the note in bank, or was a mere gift to him of so much money?

The testimony on the part of the plaintiff tended to show that when she handed the deed to her son, Arthur, she told him to take it and put it on record. That on the part of the defendant tended to show, when she handed the deed to him, she told him to take it home for her as she had no pocket to put it in, and was going to the dressmaker's to try on a dress before going home. Arthur himself testified that he was unwilling to have the deed made to the plaintiff and himself; that he told his mother, if she was going to make a deed, it should be made to his sister and himself.

As to the return of the $644, the plaintiff's testimony was to the effect that Mrs. Jennings gave it to him as a present without any direction what to do with it. Her testimony was

that she told him to take it to the bank and pay it on the note, and in the same connection told him that she was not going to deliver the deed to him.

There was also some conflict in the evidence as to representations alleged to have been made by the plaintiff to Mrs. Jennings in regard to the amount of her indebtedness to the bank and what the bank was going to do about it, but in the view we take of the case it will not be necessary to go into that evidence.

There was a finding and judgment for the plaintiff for the possession of an undivided half of the land sued for, $100 damages and $25 a month rents and profits. Defendants appeal.

I. We are not favorably impressed with the equity side of the defendants' case. It is very clear from her own testimony, in fact from her answer, that her purpose in making the deed in question was to put the property out of reach of her creditor. She may not, as her learned counsel say, have been *in pari delicto* with the plaintiff, but she is not so free from blame as to make her an object of especial care to a court of equity. Courts of equity are rather disposed to leave parties to suffer the inconvenience that their own wrongdoing has occasioned. And although it will sometimes grant relief where the parties, though both in the wrong, are not equally so, as in Boston v. Balch, 69 Mo. 115, cited by the learned counsel, yet it only interferes in such a case to prevent a greater wrong.

If the chancellor decided this cause on the allegations in the answer of fraudulent representations, we think his finding as to the fact was right. The burden of proof on that issue was on the defendant. There was no such preponderance of evidence in her favor as would have justified the chancellor in setting aside her deed on that ground. There is no reason shown why she should have relied on information given her by the plaintiff as to the amount of her indebted-

ness to the bank. She was in as good position to know that fact as the plaintiff. And as to what the bank was likely to do about it, there is nothing to show that the plaintiff pretended to have any special information on the subject.

But taking the answer for true, it does not make out a case for equitable relief, because it shows that the defendant has an adequate defense at law, that is, that the deed was never delivered. If it was not delivered, it was no deed and therefore there was nothing for a court of equity to act upon. We do not say that there might not be circumstances surrounding an undelivered document, which would call for the aid of a court of equity to assist the defense at law, but this is not such a case.

We therefore conclude that neither on the pleadings nor proof is the defendant entitled to equitable relief.

It does not very clearly appear from the record upon what theory the case was decided. The argument is made for respondent that appellant's contention that the equitable defense converted the entire suit into a suit in equity, carried with it the admission that the deed was duly delivered. That would have been the result if the answer had made out a case for equitable relief. But if this case went off on that theory it left untried the main issue in the lawsuit. The answer expressly denies the delivery of the deed, and therefore if the fact of delivery was assumed or treated as admitted and the judgment for the plaintiff was rendered solely on the ground that the defendant's evidence failed to sustain her equitable defense, it was error. When the court trying the equity branch of the case reached the conclusion, if it did so, that the evidence did not support the allegations of the defendant as to fraud, it should have so announced, and then have proceeded to try the issues at law. [Miller v. Railroad, 162 Mo. 424.] Or, if objection had been made in time, the court should have ruled that the answer fell short of making a case

for equitable relief and then there would have been left only the issues at law to be tried.

II.   The crucial question in this case is, was the deed delivered? and that is purely an issue at law.   There was testimony tending to show a delivery, and if that question had been clearly presented to the trier of fact, we would not, in the exercise of our appellate jurisdiction, feel justified in setting aside the finding solely on the ground that we thought the weight of the evidence was the other way.   But in the state of this record, it appears to us as not unlikely that that question got lost in the other issues or, at all events, that it was not tried as it should have been.

Delivery of a deed is the consummation of the act, the completion of the contract, and in order to its accomplishment there must be a meeting of the minds of the parties on the purpose.   "In order to ascertain whether there has been a delivery of that deed or not, the intention of the parties in the entire transaction must be considered in connection with what they said and did."   [Miller v. Lullman, 81 Mo. l. c. 316.] The act must have been with the intent on the part of the grantor to divest himself of title, and it must have been accepted by the grantee with the intent to take the title as indicated in the deed.   These two acts are essential to the complete delivery of the deed.   [Miller v. Lullman, supra; Tyler v. Hall, 106 Mo. 313; Hall v. Hall, 107 Mo. 101; Tobin v. Bass, 85 Mo. 654; Sneathen v. Sneathen, 104 Mo. 201; 9 Am. and Eng. Ency. Law (2 Ed.), 153, 161.]

Although Arthur was a minor, yet if the deed was delivered with the intention of all the parties to the transaction to pass the title as indicated in the deed, it was as valid a delivery as if it had been so delivered to the plaintiff.

It is almost indisputable from the evidence that the moving purpose of Mrs. Jennings was to put the property out of reach of the bank.   Independent of that purpose there would have been no sale.   She had no purpose as a mere matter of

bargain and sale to make that disposition of the property. It was bringing her in an annual rental of $584, hence, there was no business motive to sell for $900. If she had intended to divest herself of the title and pass it to her son-in-law and her son, if she had intended to make a complete delivery of the deed, why did she hand it to the boy instead of the man? And if the plaintiff had understood it to have been a straight purchase on his part, why did he not interpose and see that the deed was put on record? He knew that it was so managed as that it did not come into his hands and that it was taken to the home of Mrs. Jennings, not recorded, and put into her bureau drawer and retained in her possession. If, as the plaintiff says, Mrs. Jennings when she handed the deed to Arthur Jennings, told him to put it on record, why did he suffer Arthur to take it to his mother's house and not put it on record? Arthur's conduct and the plaintiff's conduct were not consistent with the instructions given him if those instructions were as the plaintiff says they were. On the other hand, if Mrs. Jennings' statement is true that she handed the paper to Arthur and told him to take it home for her as she had no pocket in which to put it, the conduct of all the parties was entirely consistent with that direction.

Again: To accomplish the fact of delivery, it was not sufficient that Mrs. Jennings should have delivered it with the intention of passing the title to the grantees, but it was also necessary that Arthur should have received it with that intention. The testimony on that point is meagre, yet as far as it goes it is to the effect that he was not willing to accept it in that way; if such a deed was to be made, he wanted it made to his sister and himself. He was a minor, and it is agreed for respondent that the deed being for his benefit, his acceptance will be presumed. [Standiford v. Standiford, 97 Mo. 231.] We can not, as a matter of law, say that this deed was unquestionably for his benefit. By its terms his mother conveys to the plaintiff an undivided half of the chief part of

her estate, for an apparently inadequate consideration, while, he is a minor and dependent on her. But even if it were unquestionably for his benefit the presumption of acceptance by him is only prima facie, and the evidence as far as it goes tends to overcome that presumption.

Within a few days after she had settled with the bank, Mrs. Jennings returned to the plaintiff the very $644 he had given her, and he received it knowing then that she still had possession of the deed, and that it had not been recorded. He testified that he understood that to have been a present from his mother-in-law to him, but her testimony was that she gave it to him to pay on that $900 note, and in fact he did so apply it, and she paid the balance of the note in a short while, and he knew it.

Of course, the repayment of the money to him under those circumstances would not have the effect to annul the sale or retransfer the title to Mrs. Jennings, if there had been a sale and delivery of the deed, nor would it estop the plaintiff to assert any title he might have acquired, but it is a circumstance to be taken into consideration in arriving at the intention of the parties in this transaction.

It is not claimed that there was any delivery of the premises to the plaintiff on the execution of the deed or that any was demanded then or immediately thereafter. The conduct of the parties in that respect also was inconsistent with the idea that there had been a real sale.

For the reasons above given we think there should be a new trial of the cause.

III. Arthur Jennings was not a necessary party to this suit and it was therefore improper to have made him a defendant. Section 544, Revised Statutes 1899, providing that parties united in interest with the plaintiff and refusing to join in the suit may be made defendants, does not apply to a case in which the plaintiff may sue for and recover his interest

Vol 166 mo—24

independent of another party who has a like interest. If the plaintiff is entitled to an undivided half of this land, he is not dependent on Arthur Jennings for his right to sue and recover it.

The judgment is reversed and the cause remanded to the circuit court of Chariton county to be retried according to the law as herein expressed. All concur.