# PATRICK L. GROWNEY, Appellant, v. JAMES LOWE et al.

### Division One, June 1, 1911.

1. **JUDGMENT: Revivor: Barred: No Contest: No Appeal.** A judgment reviving a judgment more than ten years old, which was contested and from which no appeal was taken, is valid and cannot be contested in a suit, brought by the plaintiff therein and the purchaser thereunder, to set aside a deed made by defendant to hinder and delay his creditors.

2. **CONVEYANCE: Delivery: For Purposes of Suit.** A delivery of a deed, to take effect as a conveyance of land, must be with the understanding, on the part of both grantor and grantee, that it is the consummation of the conveyance. The one must give it with the unequivocal intention of parting with the title conveyed, and the other must receive it with the intention of taking such title. So that where the sheriff, at execution sale, sold for $10 land to plaintiff, who paid him only $5, and retained the deed, without recording it, until the day of the trial of plaintiff's suit to set aside a deed to the same land made by one of the defendants to the others to delay and hinder creditors, and then gave it to plaintiff in order that he might use it for the purposes of this suit, it being understood by both that plaintiff was to pay the amount of his bid before he was entitled to the deed, there was no such delivery as showed title in plaintiff.

3. **FRAUD OF GRANTEE: Protecting Own Interest.** If the only object of the grantees was to protect their own valid interests, they are not chargeable with fraud, even if fraud could be charged against their grantor.

4. **PREFERRING CREDITORS.** An insolvent debtor is allowed to prefer a creditor even when his object is thereby to prevent another creditor from collecting his debt; and the preferred creditor, although he may know of the fraudulent purpose of his debtor, is not chargeable with fraud, if his only motive is the securing of his own debt.

5. **FRAUDULENT CONVEYANCE: Consideration.** Whether advances made to a debtor by his brothers and sisters, after he became of age, to pay for his education and to establish him in business, made out of products arising from their father's farm entrusted to them, be considered as debts he owed his father's estate, or as the motive that induced him to agree with them to relinquish his interest in the farm, the effect is the same as constituting a consideration for the deed to them assailed as being in fraud of his other creditors.

234 Sup.—44

6. ————: ————: **Pleaded by General Denial.** Where the petition charges the deeds were executed without consideration and for the purpose of defrauding plaintiff in the collection of his judgment, defendants are authorized, under their general denial, to prove those allegations were not true, and hence that the deeds were supported by a valuable consideration.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison*, Judge.

AFFIRMED.

*Patrick L. Growney* for appellant.

(1) The appellate courts will examine the evidence in an equity case, fully, and will render such decree as is warranted thereby. Beene v. Schnecko, 100 Mo. 250; Miller v. McCaleb, 208 Mo. 573; Gottfried v. Bray, 208 Mo. 663. There were no objections or any controversy, in the trial court, to appellant's record as a judgment creditor, and no objection or exception by respondents, to appellant's sheriff's deed, as offered in evidence; and the prayer of appellant's petition only seeks to set aside and cancel the alleged fraudulent deeds held by respondents as was done in Gust v. Hoppe, 201 Mo. 302.. Quitclaim deeds, with an expressed nominal consideration, are badges of fraud, on their face, when they come in conflict with claims of creditors. Ridgeway v. Holliday, 59 Mo. 455; Stoeffel v. Schroeder, 62 Mo. 150; Stievers v. Horne, 62 Mo. 475; Sharp v. Cheatham, 88 Mo. 510; Bank v. Nichols, 202 Mo. 321. A deed voluntarily made, rendering one insolvent by the act, is void as to existing creditors. Shaw v. Tracy, 83 Mo. 224; Needles v. Ford, 167 Mo. 495; Bank v. Nichols, 202 Mo. 322. And the deed must be held voluntary, where no consideration passes at the time, and the indebtedness alleged, or attempted shown, as a consideration, was not enforceable against the grantor by the grantee, either in law or in equity. (2) The law of this case may be conceded, and the

real question one of fact. If the purpose of Joseph in deeding the property was to put it out of the reach of the execution that would follow the judgment he apprehended appellant would recover, then it was a fraudulent transaction on his part; and if defendant James, with knowledge of the fraudulent purpose on part of grantor, assisted in the accomplishment of that purpose, then it was a fraudulent transaction on the part of both, and the deed should be set aside. Gust v. Hoppe, 201 Mo. 298. (3) The basis of respondents' claim involves the relation of brothers and sisters, and the authorities frequently have occasion to scrutinize and comment on their conduct, when they combine, collude and confederate to assist each other in opposition to a creditor of one of them. Bank v. Fry, 216 Mo. 42. (4) But one defendant (respondent) testifies as a witness in the case, while the other two charged with the same fraud are present at the trial and remain silent. From this fraud will be presumed. Bank v. Nichols, 202 Mo. 323.

*T. A. Cummins* and *Shinabargar, Blagg & Ellison* for respondents.

(1) Joseph, being indebted to the estate of his father, John, at the time of the death of the latter, in a sum largely in excess of what would have been his share of the estate of his father, had no interest in the real estate and other property and effects owned by the deceased. Ayers v. King, 168 Mo. 244; Leitman v. Leitman, 149 Mo. 112; Trabue v. Henderson, 180 Mo. 616. (2) An heir's interest in an estate consists of his distributive or inherited share of the estate, less what he owes the estate. A judgment against such heir in favor of a general creditor cannot be paid out of his distributive share before his debts to the estate are satisfied. Duffy v. Duffy, 155 Mo. 144; Ayers v. King, 168 Mo. 244. (3) If a parent as surety pays a debt for a child, or where elder children have been educated

and supported out of the parent's estate and the younger children do not derive any such benefit, such advancement should be charged against them in favor of the younger in making distribution.    State ex rel. v. Stephenson, 12 Mo. 178; 4 Ency. Ev., sec. 589.    (4) The indebtedness due to a father by the child, is equivalent to an advancement to the child.    Upon distribution of the father's estate, the child's right of inheritance, or his right as a distributee, will not attach until his indebtedness be first paid.    Ford v. O'Donnell, 40 Mo. App. 52; Duffy v. Duffy, 155 Mo. 144.    (5)    Nor does the Statute of Limitations run against such advancement.    It remains unimpaired by lapse of time. Leitman v. Leitman, 149 Mo. 121; 2 Worn Am. Law of Admr. (2 Ed.), sec. 564.    (6)    There was no evidence offered by plaintiff to establish the allegations of his petition.    The burden was upon appellant to show bad faith upon the part of the respondents.    Trabue v. Henderson, 180 Mo. 616; Wall v. Beedy, 161 Mo. 640; Bank v. Worthington, 145 Mo. 100.

VALLIANT, J.—This is a suit in equity to set aside two deeds to an undivided one-sixth interest in 240 acres of land in Nodaway county, on the ground that they were without consideration, and made to hinder and delay the plaintiff in the collection of a debt that the grantor in the first deed owed to the plaintiff.

According to the petition the plaintiff in April, 1894, obtained a judgment in a justice's court for $48.50 against Joseph Lowe, a brother of the defendants.    Joseph at the time was insolvent and nothing could be made by execution, so the judgment remained unsatisfied; in 1901 he became the owner by inheritance from his father of an undivided one-sixth of the land in question; on November 6, 1906, plaintiff began proceedings in the justice's court to revive the judgment, which proceedings went to the circuit court on appeal, where the judgment was revived March 6, 1907; exe-

cution then issued on the judgment, which was levied on Joseph's interest in the land, and at a sale by the sheriff plaintiff became the purchaser of that interest and received the sheriff's deed for the same. After the institution of the revivor proceedings, and after notice thereof had been duly served on Joseph, but before the return day of the writ, to-wit, on the 19th day of November, 1906, Joseph executed a quitclaim deed to his one-sixth interest in the land to the defendant James Lowe, his brother, the consideration expressed in the deed being one dollar, but it was without consideration; that deed was placed on record November 20, 1906, and three days thereafter James executed a quitclaim deed, which was also duly recorded, to the same interest, to his two sisters, who are also defendants; that deed was also without consideration, and both deeds were made to hinder, delay and defraud the plaintiff in the collection of his judgment. The prayer of the petition was that the deeds be cancelled. The defendants answered by general denial.

At the trial plaintiff introduced evidence to the following effect: The record showing that he began the proceedings in the justice's court to revive the judgment, November 6th, and the return day of the scire facias was November 27, 1906; also the judgment on the circuit court reviving the judgment of the justice's court; the records showing the two quitclaim deeds to defendants; the sheriff's deed to himself, showing that the land was struck off to him for the sum of ten dollars, which was the highest bid. In his own behalf plaintiff testified that at the sheriff's sale one of the attorneys for the defendants announced that Joseph had no interest in the land, and if any one should buy the land at that sale he would buy only a lawsuit. The sheriff's sale was on the 22d of June, 1907. On cross-examination of the plaintiff it came out that he had not put the sheriff's deed on record, that he had paid the sheriff only five dollars of the amount of his bid and

the sheriff had withheld the deed until the rest of the money was paid, but that on the day before the trial the plaintiff had asked the sheriff to give him possession of the deed to use at the trial and the sheriff had complied with the request; we infer from the plaintiff's testimony and that of the sheriff that the transaction was not understood by them as a delivery of the deed, but that it would be returned to the sheriff after use at the trial and retained until the balance of the purchase money was paid.

On the part of defendants the testimony tended to show as follows: The 240-acre farm had belonged to the father of the Lowes, he bought it in 1878 and moved on it with his family, consisting of his wife and six children, of whom Joseph was the eldest son. The father was a locomotive engineer and was engaged in that work in Pennsylvania, where he spent the most of his time until he became too old to work, then he came home where he lived until 1901, when he died intestate. During his absence in Pennsylvania and after his return the farm was cultivated and managed by his wife, the mother of defendants, with their assistance, until her death in 1883, and after that by the defendants. About 1879 Joseph left the farm and thereafter took no part in its operation or management, but his mother during her lifetime and the defendants after her death advanced to Joseph out of moneys derived from operating the farm from time to time, at first for his education, and afterwards when he was of age for his business ventures, until these andvancements amounted to about $2800. After the death of the father these children who were then all of age got together and agreed that as there were no debts against the estate there should be no administration, and that as Joseph had already received, in the way of the advancements above mentioned, as much or more than his interest in the estate, he would relinquish his title to his brothers and sisters, then living on the farm, who were

the defendants and a brother who has since died. And a like agreement was also made in reference to the interest of a sister who was living in the east and who had likewise received as much as her share was worth. But this agreement was never reduced to writing, nor deeds made until the deeds that are now assailed. Joseph all this time was a traveling salesman with his home in Omaha. In November, 1906, Joseph made a visit to Nodaway county, and while there was served with the *scire facias* sued out by plaintiff to revive his judgment. He returned to Omaha, and on November 19, 1906, defendant James Lowe went to Omaha and obtained from Joseph the quitclaim deed of that date, and on his return home he executed the other quitclaim deed conveying the same interest to his sisters.

On this evidence the chancellor found for the defendants and dismissed the plaintiff's bill; from that judgment the plaintiff appealed.

I. The plaintiff's claim is not such as to especially appeal to a court of equity for relief. His judgment was more than ten years old when he began his proceeding to revive it. If the revivor had been contested it is questionable if the plaintiff could have succeeded. But as there was a judgment of revivor and no appeal, that is the end of it.

The plaintiff failed in his proof to show title in himself. The sheriff's deed was never delivered to him in the sense of the legal delivery of a deed. It was given into his possession only for the purpose of using it as evidence in the trial of this case, and to be returned to the sheriff on his demand unless the purchase money should in the meantime be paid. A delivery of a document to take effect as a deed must be with the understanding on the part of both grantor and grantee that it is the consummation of the transaction; the one must give it with the unequivocal intention of parting with the title conveyed and the other must receive it

with the intention of taking such title. [McNear v. Williamson, 166 Mo. 358, l. c. 367.] As this was a sale to satisfy the plaintiff's own judgment, he might have had the right to have the purchase money over and above the costs in the case credited on his execution, but we do not know how that account stood as the plaintiff's evidence did not go into that matter. Both the sheriff and the plaintiff understood that the latter was to pay the amount of his bid before the delivery of the deed, and that was not done.

Plaintiff in his brief says that even if his title was not proven he is entitled as a judgment creditor to the relief prayed. But that is not the theory of the plaintiff's bill.

II. We have no doubt but that the defendants were aroused to a sense of danger of losing the interest that Joseph had agreed to give them in the estate of his father, in consideration of the advances he had received, by the movement of the plaintiff to have his judgment revived, and that it was to secure that interest before the plaintiff could revive his judgment that induced James to go to Omaha and get the deed of date November 19, 1906, and that the deed he made to his sisters on the 23d following was hastened by the same cause, but if their only object was to protect their own interest they are not chargeable with fraud even if fraud could be charged against Joseph. If their purpose was only the selfish one of securing themselves, and not of aiding Joseph in putting his property beyond the reach of the plaintiff, they are not to blame.

An insolvent debtor is allowed to prefer a creditor even if his object is to prevent another creditor from collecting his debt, and the preferred creditor, although he may know the fraudulent purpose of his debtor, is not chargeable with fraud if his only motive is securing his own debt. [Alberger v. White, 117 Mo. 363; Crothers v. Busch, 153 Mo. 606.] Whether we treat the advances that were made to Joseph after he became

of age as debts he owed the estate of his father or consider them as the motive that induced him after his father's death to agree with his brothers and sisters to relinquish to them his interest in the estate, the effect is the same as constituting a consideration for the deeds assailed. Appellant contends that this defense was not pleaded in the defendant's answer, which was a general denial only. The petition states that these deeds were executed without consideration and for the purpose of defrauding the plaintiff in the collection of his debt, the general denial puts those alleged facts in issue; defendants had a right to prove if they could that those statements in the petition were not true.

Appellant contends that the advances to Joseph cannot be considered as debts by him owing to the estate of his father, because they were not made by the father, but by the mother while she lived, and the defendants after her death. The evidence showed that the advances came from the product of the farm, which was the property of the father and which was by him entrusted to the mother while she lived and the defendants after her death. Whether the advances created a technical debt in favor of the father or not, they were made to Joseph out of the property that descended to the father's heirs at his death and they amounted to as much or more than Joseph's share in the estate and, if the defendant's testimony is true, they agreed shortly after the father's death that in consideration of those advancements Joseph would relinquish his interest in the estate to the defendants. Whether we consider the moneys so advanced as constituting a debt due the estate or advances on his share or as debts due to the defendants, or in whatsoever light they be considered, they constituted a valuable consideration for the deeds in question.

The chancellor had the correct view of the case. The judgment is affirmed. All concur.