SAMUEL H. JONES and HILDA ADELL JONES, his wife, Appellants, v. PEARL JEFFERSON ET AL.—66 S. W. (2d) 555.

Division One, December 22, 1933.

*Freeman L. Martin* for appellants.

*Greensfelder & Grand* for Pearl Jefferson and A. W. Jefferson.

STURGIS, C.—The plaintiffs, husband and wife, have appealed from a final judgment rendered for defendants after the trial court had sustained defendants' demurrer to the petition. The object of the suit is to obtain a decree setting aside a deed executed by plaintiffs conveying to defendant Pearl Jefferson, a daughter of the first named plaintiff, certain described real estate in the city of St. Louis. The other defendants have an interest in the land in question but are not materially interested in the result of this suit. The sole question for decision here is whether on the facts stated in the petition the plaintiffs are entitled to the relief prayed for. The trial court held that they are not, and we are asked to reverse the judgment.

It is necessary in determining this question to consider and take as true the allegations of fact contained in the petition, keeping in mind that plaintiffs now strenuously claim that the deed which they executed and now ask to be set aside was never delivered to or accepted by the defendant Pearl Jefferson. The real controversy here is between Samuel H. Jones, a plaintiff, and his daughter, Pearl Jefferson, a defendant, and we shall refer to them as the plaintiff and defendant respectively.

In substance the petition alleges: That on and prior to July 14, 1927, the plaintiff, Samuel H. Jones, was the owner and in possession of the land in question; that said plaintiff had recently, January 18, 1927, married his coplaintiff; that prior to such marriage he was a widower and "was keeping company with another woman;" that plaintiff, a negro, was pastor of a colored church in St. Louis and "the woman with whom he was keeping company was a member of his church; that the woman whom he married (another woman) was also a member of said church;" that after plaintiff's marriage to his coplaintiff "the other woman claimed that this plaintiff had promised to marry her, and had failed, neglected and refused to do so," and had made complaint to the church, which, on investigation, dismissed the plaintiff as pastor of the church; that all these proceedings took place in May and June, 1927, and thereafter in July, 1927, the said other woman, who claimed that this plaintiff, Samuel H. Jones, had promised to marry her, *threatened to bring a suit for breach of promise against him.* It was under these circumstances, as plaintiff alleges, that these plaintiffs agreed between themselves that said real estate owned by plaintiff "should be *transferred* to defendant, Pearl Jefferson, his daughter by a former marriage, *for convenience,* to be *reconveyed* to them upon request;" that plaintiff called his daughter, the defendant, who lived in Memphis, Tennessee, over the long distance telephone to come to St. Louis at once, "that he was having some trouble which he would explain when she arrived;" that defendant came forthwith to St. Louis and in the presence of plaintiffs, her father "explained to her (defendant) that a certain woman claimed that he had promised to marry her and had made complaint to the church, and that now she was threatening to file a suit for breach of promise against him; and that he wanted to *convey* the described real estate to her for convenience, and that she should reconvey it to him on request;" that the defendant's husband, also a defendant, should know nothing about this; that the daughter (defendant) then and there agreed to accommodate the plaintiff, whereupon "plaintiff and defendant went to an attorney's office and explained the aforesaid facts to him and requested said attorney to draw a deed of conveyance to said property, which was accordingly done; that plaintiff then and there executed said deed in the presence of said attorney; that the father handed said executed deed to said attorney and *requested that he record the same*

610

and when recorded to return said deed to him, to which said daughter assented; that said attorney did have said deed recorded and when it was returned to him by the recorder said attorney kept said deed in his office for several months before the said plaintiff called for it, when it was *delivered to him;* that the father paid all the fees to drawing, acknowleding and recording said deed.''

The petition then sets out a copy of the deed in question and it will suffice to say that it is an unconditional warranty deed in common form, dated July 14, 1927, whereby plaintiff, Samuel H. Jones, and wife grant, bargain, sell and convey to Pearl Jefferson, defendant of Memphis, Tennessee, in consideration of one hundred dollars and ''other valuable considerations'' the land now in question. The grantee is to pay the taxes for 1927 and thereafter. The deed is duly acknowledged on July 14, 1927, before a notary public in St. Louis. The recorder's certificate thereon shows that it was filed and recorded July 15, 1927, in Book 4655, at page 474, in the recorder's office.

It is then further alleged that at plaintiff's instance and request the defendant, Pearl Jefferson, and husband later executed a deed of trust on said property to a building and loan association, which is made a defendant, in order to refinance the property, and presumably plaintiff paid the interest and dues on this loan out of the rents. It is also alleged at some length that defendant still later fraudulently procured plaintiff to execute an assignment of the rents on said property to defendant while plaintiff was about to die and incapable of transacting business, and this assignment of rents is asked to be set aside. As the main question at issue is the delivery of the warranty deed, it is apparent that whatever occurred after such delivery would have little, if any, bearing on that issue and we omit that part of the petition. The plaintiff also alleged that after said deed had been recorded and was returned to him, the defendant on February 19, 1930, and while plaintiff was sick and in the hospital, wrongfully and without his knowledge or consent, obtained possession of the recorded deed and has refused to return the same to him.

The petition further alleges that after the said property was conveyed to Pearl Jefferson as aforesaid, plaintiffs had the absolute and exclusive possession, control and management of said premises, collecting all rents and profits from said property and paying all repairs, taxes and assessments of every nature placed against it; and said possession, control and management of said property has been exclusive and uninterrupted from the time of said conveyance to February 19, 1930, when plaintiff signed said release or assignment of rents as aforesaid at said hospital; that at no time have plaintiffs or either of them made any report or delivered anything to said defendants or either of them; neither have said defendants or either of them requested or demanded of plaintiffs to make any report of the profits and income of the said premises since the aforesaid conveyance

July 14, 1927, to February 19, 1930, a period of about thirty-one months.

Plaintiffs further state that it was mutually agreed between the plaintiffs and said defendant, Pearl Jefferson, the daughter of plaintiff, Samuel H. Jones, at and before the execution of said deed conveying said property to said Pearl Jefferson and before said deed was delivered to said attorney and by him recorded, "that the title to said property should not pass," but that all of said acts and agreements as hereinbefore fully set out were for the special benefit and convenience of the plaintiffs, and that it was a part of said agreement between the said parties made in the presence of said attorney that the plaintiffs should continue to have the exclusive, absolute and uninterrupted control, possession and management of said property from the date of said conveyance to the making of said assignment of the rents.

The prayer of the petition is for a decree setting aside, annulling and canceling the deed mentioned and *divesting the title out of defendant,* Pearl Jefferson, and her husband, and vesting same in plaintiffs.

█ Whatever else may be said of the petition filed in this case, the attorney who drafted the same has been candid in stating the facts. The question of whether the deed in question was delivered or not is a mixed question of law and fact. This court, as well as plaintiff, in determining whether there was a delivery of the deed so as to pass title from plaintiff to defendant, is bound by the facts stated, but insofar as the pleader attempts to state the conclusion drawn from such fact that the deed was not delivered so as to effectuate a transfer of the title to defendant, such conclusion is not binding on this court. Considering the facts as stated in the petition, we think that the conclusion to be drawn therefrom is that the deed in question was delivered. Delivery is essential to the validity of a deed as a transfer of title. All the authorities so held. █ Any statement or act which clearly and unequivocally manifests the intention of the grantor that his deed in due form and with apt words of conveyance and transfer of title, signed and acknowledged, shall presently become operative and effective beyond his recall, constitutes delivery. [18 C. J. 197; Chambers v. Chambers, 227 Mo. 262, 282, 127 S. W. 86; Hall v. Hall, 107 Mo. l. c. 107, 17 S. W. 811; Standiford v. Standiford, 97 Mo 231, 10 S. W. 836.]

█ Now the petition here makes it clear that plaintiff, because of his past conduct in dividing his courtship between two lady members of his congregation, found himself married to one and threatened with a breach of promise suit by the other, the result of which he justly feared, and in order to forestall such result and beat the case on execution, plaintiff avers that he and his coplaintiff agreed between themselves that his property should be "transferred" to his daughter, this defendant, for convenience (to him), to be "recon-

612

veyed'' to plaintiffs' when they so desired and requested. It will be observed that the defendant had no part in formulating this scheme and knew nothing about it till plaintiff called her to come to St. Louis, that he was in trouble and would explain on her arrival. On her arrival there plaintiff did explain the nature of his trouble and that he was about to be sued for breach of promise. Plaintiff then told defendant that he wanted to convey this property to her for ''convenience,'' the convenience evidently being to either deter the other woman from prosecuting her breach of promise suit, or, if the worst came, to beat her on execution, and that defendant should reconvey the property to him on request. Defendant assented to this proposition ''and agreed to accommodate her father.'' Now, knowing the scheme, to-wit, to transfer and convey the property to defendant, and its purpose, to-wit, to have it reconveyed to plaintiff at his request when the danger was over, let us consider how and to what extent this was carried into effect. The plaintiff and defendant went to an attorney and conveyancer and ''explained the facts'' and requested the attorney to prepare a deed of conveyance to said property, which he did, and plaintiffs *executed* the deed in his presence; then plaintiff handed the deed to the attorney and requested the attorney to record the same and when recorded to return the deed to plaintiff. The attorney did this and kept the recorded deed till the plaintiff called for it, when it was given (''delivered'') to him. Of course, the deed could not be ''delivered'' *to him* in a legal sense, since, according to plaintiff's contention, it had never been delivered *by him.*

It is apparent that if there was at any time a delivery of the deed so as to make it effective as a conveyance, such delivery was in connection with its execution and recording, and anything done with the deed or under it or in connection with it thereafter could only be considered, if there was doubt, on the question as to whether the deed had been delivered or not. We think, however, there is no doubt but that the facts stated constituted a delivery in the legal sense of making the deed effective as a conveyance, and hence the fact that plaintiff had possession of the recorded deed after its record until defendant wrongfully and surreptitiously got possession of it, that he continued in possession of the property in question, collected the rents, etc., and treated the property as his own, does not show that the deed was not delivered. [18 C. J. 202, 206, 208.]

█ The idea that the deed was never delivered, that is, never became effective as a transfer of the title of this land to defendant, is totally inconsistent with plaintiff's allegations as to plaintiff's intent in making, executing and recording the same. Bearing in mind that plaintiff was ''in trouble'' because of the threatened breach of promise suit, the plaintiff alleges that he and his wife, his coplaintiff, agreed, that is, made up their minds, that the property should be ''transferred'' to defendant, which could only be accomplished by

delivery of the deed, and that defendant would "reconvey" same to them, which would and could only be done after the title was vested in defendant. The deed was prepared and executed for this purpose and for no other purpose did plaintiff cause it to be recorded as a public muniment of title. All this was done on plaintiff's initiative in order to make his intent effectual. Plaintiff's allegation that it was the agreement between him and defendant "that the title to said property should not pass" is a mere conclusion of the pleader based on a secret intention of plaintiff, which is at war with the overt acts and the declared purpose and intent to transfer and convey the property to defendant under an agreement that she would reconvey it to plaintiff at a later date.

The case of Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118, is much like this one both in its object and on the facts, except that what was there shown by the evidence is here admitted by the pleadings. That was a suit to set aside a deed made by plaintiff to defendant under practically the same circumstances and for the same purpose as here. The court there said: "He was sued by the woman for damages for breach of promise to marry. At that time, his sins having found him out, he was in hard lines. The evidence falling from his lips and put in by his witnesses showed beyond cavil or doubt that he feared the result of a civil suit, and, casting about him for a way out, he conceived the plan of circumventing the woman by disposing of his real estate." And, as here, there was no fraud or wrongdoing on defendant's part in inducing the deed to be made. The wrong, if any, was in defendant's subsequently refusing to do what this suit seeks to compel her to do, reconvey the property to plaintiff. In that case the deed was recorded, but it was claimed by plaintiff that defendant violated the agreement in having that done, and as to that the court said: "We deem that issue immaterial; because, if never delivered, it never became operative as a conveyance and, in that view of the case, its record created a cloud on plaintiff's title removable in equity. If, however, it was in truth and in fact delivered, then the title passed and its mere record (standing alone) caused plaintiff no injury and gave him no cause of action. [Cook v. Newby, 213 Mo. 471.] Hence, the real question resolves itself into the delivery of the deed. . . . We are constrained to disagree with the learned chancellor in his finding that there was no delivery. We base our conclusion not only on what seems to us the great weight of the credible oral testimony on that point, but on another and *controlling* fact, viz.: that *delivery was essential to consummate the admitted fraudulent purposes of plaintiff*. He started out to do that very thing, to-wit, commit a fraud. What stopped him? Is it supposable in reason that a grantor who starts out to make a deed for the avowed purpose of perpetrating a fraud would (absent twinge of conscience or visible obstacle) halt midway in his career of covin and approach to and yet not do the identical thing he set out to do,

to-wit, consummate the fraud by passing the title to his grantee by delivering the deed? Was something doing, and yet nothing done? He either delivered that deed or else he perpetrated a fraud within a fraud, i. e., he put himself and the grantee in a fix where, when the worst came to the worst, they both could swear in a court of justice that the deed was delivered. Why should we pick the latter theory in preference to the former and thus add contemplated perjury to the fraud? We think it must be held there was a delivery of the deed and this is so although it may very well be there was an understanding the title should be conveyed back when the clouds rolled by, if ever. But, observe, an agreement to convey the title back *assumes the fact that the title had once passed*, and that is fatal to plaintiff's theory of no delivery.''

In that case plaintiff claimed that the deed was put of record by defendant without his consent and in fraud of her agreement not to record it. In this case, in addition to plaintiff's averments that his purpose and intent in executing the deed in question was to transfer and convey the land to defendant, a purpose that could not be accomplished except by delivery of the deed, there is the outstanding fact that when the deed was fully executed plaintiff voluntarily and to carry out his purpose to place the legal title of the property in defendant, caused the deed to be put of record under our recording acts. It has been held that the mere placing a deed of record does not necessarily and conclusively show a delivery. McCune v. Goodwillie, 204 Mo. 306, 338, 102 S. W. 997, where the court said: ''The recording of a deed may be presumptive evidence of delivery, and, being for the grantee's benefit, may be presumptive evidence of acceptance, but it is a rebuttable and not a conclusive presumption in each instance. [Cases cited.]''

In Deer v. King (Mo.), 30 S. W. (2d) 980, this court said: ''The filing (by grantor) of the deed for record was tantamount to a delivery. [Chambers v. Chambers, 227 Mo. 262, 127 S. W. (2d) 86, 137 Am. St. Rep. 567.]'' ''The recording of the deed was a good delivery, and, the conveyance being for the benefit of the grantees, their acceptance will be presumed, unless they show affirmatively that they disclaimed it.'' [Whitaker v. Whitaker, 175 Mo. 1, 9, 74 S. W. 1029; Coulson v. Coulson, 180 Mo. 709, 715, 79 S. W. 473.] In Pearce v. Dansforth, 13 Mo. 360, it was held that the ''delivery of a deed by the grantor, for the purpose of having it recorded, may, under proper concurring circumstances, be regarded as a delivery to the grantee.'' In Burke v. Adams, 80 Mo. 504, 511, this court said: ''The intent to convey is evidenced by the act of making out and duly executing and acknowledging a deed. The delivery may be evidence by any act of the grantor by which the control, or dominion, or use of the deed is made available to the grantee. It is not necessary it should be handed over actually to the grantee, or to any other person for him. It may be delivered under certain circumstances,

though it remain in the possession of the maker." As to the purpose and effect of recording a deed under our registry act, this court in an early day said in Perry v. Price, 1 Mo. 553, 555: "But livery of seizin is to be supplied by registry. The objects of livery of seizin at common law were, that the country might take notice and testify the transfer of the estate, and that such as claimed title might know against whom to bring their action. [2 Bl. Com. 311.] Thus we see that one great object of the law in livery of seizin is, that it may be known who is the owner. So that men may know of whom to purchase, and may be able to distinguish their neighbor's rights from their own. But if this useful end can be effected without livery of seizin, the law will be satisfied; for the law is not for form no farther than is necessary to effect the purposes of right. The act of the Legislature of 1804 provided that all deeds concerning lands shall be recorded after being proved in a certain manner; and if they are not so recorded they shall be adjudged fraudulent against subsequent purchasers for valuable consideration. By this act, a public office is to be kept for recording deeds, to which everybody may resort and ascertain the owner of all the lands, not only in the neighborhood, but in the county. Here the object of livery of seizin is more largely and completely effected than could be done by the fact of livery itself." In Chambers v. Chambers, supra, this court said: "In this case it stands conceded that plaintiff made, acknowledged and *recorded* the deed. . . . The effect of our registry act is to make the record of a deed take the place of the significant common-law ceremony of livery of seizin. It is a solemn proclamation to the world, of which the world must take notice, that there has been a transfer of title from the grantor to the grantee, precisely as in olden times there was a symbolical public transfer by delivery of a twig, a clod or a key. Such was the early holding in this State. [Perry v. Price, 1 Mo. 555.] . . . Deeds of record are much too solemn and stable instruments to be blown away with a mere breath of testimony, or overturned by evidence falling short of the stringent character indicated." [See Derry v. Fielder, 216 Mo. 176, 191, 115 S. W. 412.] When we consider the history and significance of the solemn public ceremony of livery of seizin in transferring title to land, and that under our registry acts the recording of a deed by the grantor himself takes the place of and has the force and effect of livery of seizin, it certainly requires more than the mere assertion of a secret intent that the title should not pass in order to show a lack of delivery of the deed.

We do not see any force in plaintiff's contention that there was no acceptance of this deed by the grantee—a thing essential to its validity. It is not only alleged in the petition that defendant consented and acquiesced in plaintiff's scheme to transfer and convey this property to her and assisted, by her presence at least, in the making and recording of the deed, but she agreed to reconvey it to

plaintiff on request. She not only accepted the conveyance to her, but she is holding onto it. She has also ratified the conveyance to her by her subsequent acts, and that is sufficient. [18 C. J. 212.] The fact that she repudiated the alleged agreement to reconvey to plaintiff in and of itself shows an acceptance of the conveyance. "Aside from the presumption of an acceptance by the grantees (the conveyance being to their advantage), the implications arising from their subsequent actions and conduct leave no doubt on that score." [Deer v. King (Mo.), 30 S. W. (2d) 980; Chambers v. Chambers, 227 Mo. 262, 284, 127 S. W. 86.]

Having determined that the deed in question was delivered and accepted by defendant, it is equally clear that the conveyance to defendant was made for the purpose of defrauding plaintiff's creditor. To allow plaintiff to recover in this case would violate the maxim of equity that he who comes into a court of equity must come with clean hands. This court said in the Chambers case, supra, that "courts of equity are chary of reaching out a helping hand to those litigants who voluntarily put themselves in the predicament of plaintiff by a voluntary conveyance of land to hinder, delay, or defraud creditors. . . . [McNear v. Williamson, 166 Mo. l. c. 365.]" In the case of Creamer v. Bivert, 214 Mo. 473, 113 S. W. 1118, which, as we have said, is like this case on the facts, this court said: "Finally, plaintiff must be denied relief because of public policy— he does not come into a court of equity with clean hands. He is confronted with the related maxim that where the fault is mutual the law will leave the case as it finds it (In *pari delicto potior est conditio*, etc.). There are exceptions to those maxims, but none of them avail this plaintiff. The maxim that he who comes into equity must come with clean hands is a cardinal one. It touches to the quick the dignity of a court of conscience itself. Hence, its application does not depend upon the averments of the pleadings, or the wish of counsel, but it may be invoked and applied *ex mero motu*, by the court. . . . The case may well rest on this ground, if no other. [Poston v. Balch, 69 Mo. 115; McNear v. Williamson, 166 Mo. 358, 66 S. W. 160; Holliway v. Holliway, 77 Mo. 392; Hobbs v. Boatright, 195 Mo. 693.]" The cases so holding are too numerous to leave this question debatable. [9 C. J. 1219, secs. 115 and 122; McNear v. Williamson, 166 Mo. 358, 365, 66 S. W. 160; Keener v. Williams, 307 Mo. 682, 707, 271 S. W. 489; Derry v. Fielder, 216 Mo. 176, 193, 115 S. W. 412.]

Nor is there any force in the suggestion that this deed was not made to defraud creditors for the reason that it is not shown that there was any debt due from plaintiff to anybody. By this plaintiff must mean that there was no debt liquidated by judgment or otherwise. A reading of the cases, however, will show that it is not necessary that there should be a liquidated or ascertained debt owing by plaintiff in order to make his deed void. Plaintiff's debt in this case

was exactly the same as in the case of Creamer v. Bivert, supra. In Snitzer v. Pokres, 324 Mo. 386, 400, 23 S. W. (2d) 155, it is held that the deed is made to defraud creditors if made "for the purpose of defeating somebody who had or was about to sue them for damages."

The result is that the trial court was right in sustaining the demurrer to the petition, and the judgment is affirmed. *Ferguson* and *Hyde, CC.,* concur.

PER CURIAM:—The foregoing opinion by STURGIS, C., is adopted as the opinion of the court. All the judges concur.