ANNIE E. SHIELDS, Plaintiff in Error, v. E. W. McCLURE, Defendant in Error.

### St. Louis Court of Appeals, May 17, 1898.

1. **Estoppel, Necessary Elements.** There are five necessary elements in an estoppel by conduct. *First.* There must have been a false representation or a concealment of material facts. *Second.* The representation must have been made with knowledge of the facts. *Third.* The party to whom it was made must have been ignorant of the truth of the matter. *Fourth.* It must have been with the intention that the other party should act upon it. *Fifth.* The other party must have been induced to act upon it.

2. ————: EVIDENCE: INSTRUCTION. There is not a particle of proof in this case as to the last proposition, and the evidence relied on to establish the others is in many particulars vague and indefinite, therefore the circuit court was justified in ignoring the question of estoppel altogether, not only in giving the defendant's first instruction, but in refusing instructions numbered five and seven asked by defendant, which were drawn upon the theory that there was sufficient evidence tending to prove an estoppel.

3. **Practice, Appellate.** When no objection is made to the introduction of testimony, a party is in no position to insist upon the questions which are presented as an assignment of error.

*Appeal from the Clark Circuit Court.*—HON. EDWIN M. McKEE, Judge.

AFFIRMED.

JOHN C. PEIRSOL and R. B. BRISTOW for plaintiff in error.

The defendant states correctly the elements of estoppel *in pais* and inferentially that the case does not contain these elements. What element of estoppel is lacking in this case? Let us analyze. *First.* False representations or concealment: Does not the evidence

clearly show concealment on the part of Mr. McClure? The letter of McClure speaks of shouldering plaintiff's debt, besides Mrs. Shields testifies that in conversation with her, and also in another letter which was lost, the defendant told her he had assumed her debt and would pay it. For the purpose of submitting that proposition to the jury the court must take it as tending to prove that McClure did know that the deed contained the recital spoken of, and if McClure did not know said deed did contain said recital, and in dealing with plaintiff, so lead plaintiff to suppose that he was fully advised of the full import of his deed, yet with the secret intention (concealed) that now, if I can get time and meet with a sale of this property, all right, I will pay off plaintiff's debt and make something for myself, otherwise, when I can get no further extension of time and have no prospect for the sale of the property, I will throw it upon her hands. McClure's conduct from beginning to end of his connection with plaintiff in this case, shows that he was trying to make the plaintiff believe that he was going to pay plaintiff's debt, and deal fairly with her. What does the sequel show? When he failed to borrow money on the property and after his tenants had immeasurably damaged it, then he seeks to repudiate it—the whole matter—and throw the loss on the plaintiff. Is there no concealment here, no false representations? *Second.* Representations must have been made with knowledge of the facts: What facts? Why, that Mrs. Shields was expecting McClure to pay her debt? He surely knew that she was expecting him to pay her debt. He tells her he is going to do it, begs for time in which to do it; gets an extension of time for that purpose; clearly he knew that plaintiff was relying on his promises and at the same time he knew that he was misleading her. *Third.* The party to whom it is made must be ignorant of the truth

of the matter: Was not plaintiff ignorant of any fact that released defendant of the contract in defendant's deed; she had been told by defendant (as she says), she was told by Longmire, that McClure had assumed the payment of her debt; all of McClure's acts and dealings with her were calculated to lead her to believe he would; she was nowhere or at any time informed of the fact that McClure claimed that he had not agreed to pay her debt, until he had tendered her back a deed in March, 1896. If McClure's contentions are true, that he had made no such contract, then Mrs. Shields was ignorant of the truth and ignorant of defendant's claims. *Fourth.* It must have been made with the intention that the other party should act upon it. Did not McClure intend that Mrs. Shields should act upon his promise to pay her debt, why does he write to her in September, 1895, that he hopes "speedily" to settle the matter and that his agents are "attending to it?" Why does he agree in October to pay the $1,600 or give her a deed to the property with all the rents, if he does not intend that she shall act upon the promises to her and be lulled into security? *Fifth.* The other party must have been induced to act upon it. Did not Mrs. Shields act upon it?

F. T. Schofield for defendant in error.

There was no error in the giving of instructions. Those given, taken as a whole, fairly and correctly presented the law of the case to the jury. In such case objections can not be urged to separate instructions even although they might be erroneous if standing alone. Kingman v. Shawley, 61 Mo. App. 54, loc. cit. 60; Schroeder v. Michel, 98 Mo. 43; Deweese v. Mining Co., 128 Mo. 423. It is not disputed that, where a grantee accepts a deed containing a clause

whereby he assumes and agrees to pay a subsisting mortgage, assumpsit will lie on this promise in favor of the mortgagee. But it will hardly be contended that assumpsit will lie in the absence of a promise express or implied. The contract or covenant of assumption must, therefore, be a valid and binding one between the mortgagor and his grantee, in order to its legal enforcement by the mortgagee. If it be by deed poll, the grantee will not be bound unless the deed had been delivered to him or to his authorized agent. Metzger v. Huntington, 139 Ind. 501; s. c., 39 N. E. Rep. 235; Culver v. Badger, 29 N. J. Eq. 74; Fairchild v. Lynch, 10 Jones & Spencer (N. Y.), 265. And when the deed is made to a person without his knowledge or consent, and he repudiates it as soon as he becomes aware of its existence, he incurs no liability. Cortez v. Hargrave, 29 N. J. Eq. 446; Stevens Inst. v. Sheridan, 30 N. J. Eq. 23; 2 Jones on Mortg., sec. 738; Kilmer v. Smith, 77 N. Y. 226; Loeb v. Willis, 100 N. Y. 231. In one case where the grantee accepted the deed of the mortgagor containing a clause of assumption, and he looked over it and expressed himself satisfied with it, yet it was held that, if as a matter of fact there was no agreement to assume the debt, and the agreement of assumption was inserted in an unusual place in the deed and so escaped the notice of the grantee, he should not be bound. Bull v. Titsworth, 29 N. J. Eq. 73. So in another case in same court the deed containing the covenant of assumption was drawn by the attorney of the grantor (mortgagor) and placed of record and afterward came into the hands of the grantee, but it appeared that he had never read it or knew that it contained an assumption on his part to pay complainant's debt until after the commencement of the suit to foreclose, asking judgment against him for the residue, it was held he

was not bound. The defendant is not bound by the knowledge of Ragland that the deed contained the covenant of assumption. Ragland was the attorney of Hickman & Hawkins and acquired this knowledge while acting adversely to plaintiff's interests; hence to allow such knowledge to bind defendant would operate as an intolerable fraud upon him. True the attorney afterward became McClure's agent, but this agency had no reference to the acceptance of any deed to the property, much less to assent to such a clause contained in it. It is elementary that notice to an agent is notice to principal, only in respect of the very matter over which his authority extends. Mechem, Agency, secs. 718, 723. It is well settled that knowledge which comes to an officer of a corporation through his own private transactions, and beyond the range of his official duties, is not to be held the knowledge of the corporation, and attaches to the latter no responsibility by way of notice. Manhattan Brass Co. v. Webster, 37 Mo. App. 145; State Sav. Ass'n v. Ptg. Co., 25 Mo. App. loc. cit. 650. It is a general rule that notice of a fact acquired by an agent while transacting the business of his principal, is notice to the principal, and the rule applies to banking and other corporations as well as to individuals. * * * But the reason of the rule ceases when the agent acts for himself and not for his principal, and the rule itself ought not to apply in such a case.

BIGGS, J.—This is an action by plaintiff as beneficiary in a deed of trust on land, against the defendant as purchaser of the equity of redemption, founded on an alleged agreement on the part of the defendant to pay the mortgage debt. After reciting the existence of the mortgage debt, the deed from the mortgagors to the defendant contains the clause, to wit, "which

indebtedness the grantee (defendant) herein, assumes as a further consideration for this conveyance.'' The property was sold under the deed of trust for a sum much less than the debt and the plaintiff sues the defendant for the balance.

STATEMENT. The defendant in his answer admits the debt and that the plaintiff is its owner, but he denies that he agreed to pay it. He also admits that his deed to the land contains the clause referred to, but he avers that he was not present when the deed was executed; that it was executed without his knowledge; that the clause was inserted by the scrivener who prepared the deed without the authority and knowledge of the grantors therein; that the scrivener, instead of sending the deed to defendant, sent it immediately to the office of the recorder of deeds for record; that the defendant was notified that the conveyance had been made to him, subject to the incumbrance, and that believing this to be true he assumed control of the property and collected some rent from the tenants; that as soon as he was advised of the character of his deed he executed and tendered to plaintiff a quitclaim deed to the property, and that he also tendered to her the amount of rent collected by him.

In the reply the plaintiff pleads, by way of estoppel, that the defendant by his actions and conduct had led her to believe that he had assumed her debt; that believing this to be true and relying on it, she had refrained for several months from advertising the property for sale as she otherwise would have done, and that during the delay the machinery in the building, which constituted the chief value of the premises, was injured, neglected and carried away, thereby practically destroying the value of the property.

The defendant assumed the affirmative of the issue.   The evidence adduced by him tended to prove these facts: In 1895 the defendant was a lumber dealer. He conducted his business at Quincy, Illinois, and also at Alexandria, Missouri.  At that time the firm of Hickman & Hawkins were conducting a lumber business in Monroe City, Missouri.  They owned the mortgaged property referred to, upon which was a mill building, containing an engine and other machinery necessary to the operation of a feed and grist mill.   On May 29, 1895, they failed in business.   At that time they were indebted to defendant in the sum of $3,200 and with the view of partially securing this debt they, on the day mentioned, executed the deed in question.  At the time the defendant was in Quincy and was not advised of the intention of Hickman & Hawkins to make the deed. The deed was prepared by their attorney, and he, without any direction from them so to do, and without their knowledge, inserted the above quoted clause.

He filed the instrument for record in the recorder's office and notified the defendant of what had been done.   He wrote to the defendant that the conveyance had been made, subject to the plaintiff's debt, and did not intimate that by the terms of the deed the defendant was bound to pay the debt.   About the first of September following the defendant visited Monroe City.   He there employed a firm of real estate agents to take charge of the property for him and to attend to the collection of the rents.   On the eighth day of October he returned to Monroe City and there he met the plaintiff.   On that day he and the plaintiff entered into a written agreement in reference to the plaintiff's debt and the foreclosure of the deed of trust.   In consideration of the payment of the rents of the property to plaintiff she agreed that the payment of her note should be extended to the first day of January following,

and that the land should not be sold under the deed of trust prior to that time. The contract also contained this provision,. to wit: "The said first party (defendant) further covenants and agrees that on the first day of January, '96, he will convey the same (mortgaged premises), including all his right, title and interest and possession in and to the said real estate by a good sufficient deed properly executed to the said party of the second part, or that he will in lieu of such conveyance on the said first day of January, 1896, pay to the said second party the sum of $1,600 in cash." The plaintiff's debt at that time amounted to over $1,900. In pursuance of this contract the plaintiff's agent took control of the property for the purpose of collecting the rents. Up to this time the defendant had not seen his deed, neither had he been advised of the particular clause in the deed.

There was nothing done under the agreement of October 8, and in March, 1896, the plaintiff caused the land to be advertised for sale under her deed of trust. After the advertisement but prior to the sale, the attorney of plaintiff called the attention of defendant's agents to the clause in the deed. The agents immediately notified the defendant of this condition in the deed, which was the first information he had of it, and thereupon he repudiated the deed, that is he executed and tendered to the plaintiff a quitclaim deed conveying all of his interest in the property to her, and he also tendered to her the amount of rents collected by him. The tenders were refused. The property was subsequently sold under the deed of trust for $200.

In rebuttal the plaintiff testified that between May 29, and October 8, 1895, she received two or three letters from the defendant, in which he wrote that he had assumed her debt. The letters were lost. The statement of the plaintiff that the defendant had acknowl-

edged in the letter his assumption of the debt, was merely her conclusion drawn from the contents of the letters. She did not pretend to remember the exact language employed. The defendant introduced a copy of one of the letters, which contained this sentence, to wit: "I had to take. my interest in securing a debt and was unaware of your incumbrance at the time so that my disappointment is serious in having that to shoulder." The defendant denied that he either wrote or stated to the plaintiff that he had or would assume the debt. The plaintiff also introduced evidence tending to show that between the eighth day of October, 1895, and March, 1896, the premises were neglected; the water was allowed to freeze in the pipes connected with the machinery, causing them to burst; that some of the machinery was carried away from the mill, and that the balance, from want of proper attention, greatly deteriorated in value. Under the instruction of the court the jury returned a verdict for the defendant and judgment was accordingly entered for him. The plaintiff has brought the case here on writ of error.

On behalf of the defendant the court instructed the jury as follows:

"1. Unless the jury shall believe from the evidence in the cause that the defendant contracted with Hickman and Hawkins to assume and pay the plaintiff's mortgage debt, the verdict must be for defendant."

"2. The court instructs the jury that the clause in the deed of Hickman & Hawkins to defendant, obliging the defendant to assume and pay the plaintiff's mortgage debt, is not conclusive evidence that defendant did in fact agree to assume and INSTRUCTIONS. pay same. And if the jury shall believe from the evidence that at the time said

deed was made the defendant had not agreed with Hickman & Hawkins to assume the payment of plaintiff's said mortgage debt; and that said clause in the deed to him was inserted without defendant's knowledge or consent, and that while defendant was in possession of said property and collected the rents thereof from the tenants occupying same, he had never in fact seen said deed and did not know that it contained said clause of assumption, and that being informed afterward that the deed did contain said clause, defendant repudiated same and at once caused plaintiff's attorney to be notified of such repudiation, and thereupon executed a quitclaim deed of said property to the plaintiff and caused the same, together with all the rents received by him from said property, to be offered and tendered to plaintiff's attorney, then the court instructs the jury that plaintiff is not entitled to recover in this case and the verdict must be for the defendant."

"3.    There is no evidence in the cause tending to prove that Mr. Ragland was the agent or attorney of the defendant to receive the Hickman & Hawkins deed or to ratify for him the covenant and agreement which it contained to assume and pay the plaintiff's mortgage debt, and the jury are instructed that the subsequent appointment of Ragland by defendant as his agent to collect the rents of tenants occupying said property would not work a ratification of said clause of assumption in said deed, nor bind the defendant with Ragland's knowledge of its existence so long as such knowledge remained uncommunicated to the defendant."

The objection urged against the first instruction is that it ignores the estoppel which is pleaded in the reply, and which the plaintiff claims the evidence tends to make out. The objections to the second

instruction are that it permits the defendant to repudiate the deed *at any time* upon the discovery of the objectionable clause, and that it did not require the jury to find that the defendant after making this discovery, promptly repudiated the transaction. All of these objections we think are untenable.

There are five necessary elements in an estoppel by conduct. *First.* "There must have been a false representation or a concealment of material facts." *Second.* "The representation must have been made with knowledge of the facts." *Third.* "The party to whom it was made must have been ignorant of the truth of the matter." *Fourth.* "It must have been made with the intention that the other party should act upon it." *Fifth.* "The other party must have been induced to act upon it." There is not a particle of proof in this case as to the last proposition, and the evidence relied on to establish the others is in many particulars vague and indefinite, therefore the circuit court was justified in ignoring the question of estoppel altogether, not only in giving the defendant's first instruction, but in refusing instructions numbered 5 and 7 asked by the defendant, which were drawn upon the theory that there was sufficient evidence tending to prove an estoppel.

There is no evidence in the case tending to prove that the defendant was guilty of laches in reference to the examination of the deed. He was advised that it merely conveyed to him the equity of redemption in the land. It was filed in the recorder's office, where it remained for a long time, and so far as this record discloses, it never at any time came into the possession of the defendant. Its possession and examination by him was not necessary to the assertion of his rights under it, hence it can not be asserted that the defendant was negligent in failing to examine the deed, since there

was nothing (as the jury found) to suggest to him that the deed was different from what it it had been represented to him to be. Neither is there an adjudicated case with which we are acquainted that makes the record of the deed constructive notice to defendant that the deed contained the objectionable clause. Therefore we conclude that the objection to the defendant's second instruction is without merit, and that the court was right in directing the jury that the defendant had the privilege at the time he discovered the true nature of the deed (to wit, in March, 1896) to repudiate it.

For the same reason the circuit court did right in refusing the plaintiff's sixth instruction, which denied to the defendant the right to repudiate the deed, provided he "could by the exercise of ordinary prudence and diligence have known the contents of the deed."

The other objection to the defendant's second instruction is not well founded in fact. The instruction in unmistakable terms required the defendant to act seasonably—that is, promptly upon the discovery of the true character of his deed.

The plaintiff objected to the competency of the defendant as a witness for any purpose, for the reason that Hickman, one of the grantors in the deed, was dead. Undoubtedly the defendant was a competent witness to prove his conversations and dealings with the plaintiff as to the business in hand, therefore the objection was properly overruled, even though it be conceded that he was incompetent to testify as to other matters. As no objection was made, the plaintiff is not in a position to insist upon the questions which are presented and argued under this assignment of error.

COMPETENCY of witness.

With the concurrence of the other judges the judgment of the circuit court will be affirmed. It is so ordered.