**ALLSTATE INSURANCE COMPANY,**
a corporation, Plaintiff,

v.

Connie MARTIN, surviving wife of Farrel Lee Martin, deceased, Nora Belle Sloan, surviving wife of Rolla Alexander Sloan, deceased, and Mary Voyles, surviving wife of Virgil Voyles, deceased, and Nora Belle Sloan, administratrix of the estate of Rolla Alexander Sloan, deceased, Sidney Voyles, administrator of the estate of Virgil Voyles, deceased, Thomas M. Voyles, Jr., Lawrence S. (Bob) Martin, and Kathryn Cheryl Voyles, Defendants.

No. S 61 C 29.

United States District Court
E. D. Missouri,
Southeastern Division.

June 6, 1962.

Hyde, Purcell & Wilhoit, Poplar Bluff, Mo., for plaintiff.

Robert B. Baker, Ellington, Mo., Robert A. Dempster, Sikeston, Mo., William H. Bruce, Jr., Centerville, Mo., Jackson & Thomasson, Cape Girardeau, Mo., Schnapp & Cooper, Fredericktown, Mo., for defendants.

HARPER, Chief Judge.

Plaintiff, Allstate Insurance Company, is incorporated in and has its principal place of business in Illinois. Defendants, individuals, all reside in and are citizens of Missouri, and the amount in contro-

versy exceeds $10,000 exclusive of interest and costs. Jurisdiction, therefore, attaches under 28 U.S.C.A. § 1332.

■ Plaintiff's prayer that the court "declare the rights and duties of the plaintiff under its former contract of insurance with Thomas Voyles, Jr. * *," while not so denominated, is in effect a request for declaratory judgment under 28 U.S.C.A. § 2201. Several cases very similar to the instant one in basic factual pattern have held that inherent in such a situation is the requisite "actual controversy" to support a declaratory judgment. C. Y. Thomason Co. v. Lumbermens Mut. Cas. Co., 4 Cir., 183 F.2d 729; Inland Mut. Ins. Co. v. Eastern Motor Lines, D.C., 119 F.Supp. 344.

It is established that on January 24, 1961, an accident occurred involving the automobile owned by Thomas Voyles, Jr. (hereinafter referred to simply as "Voyles"), and purportedly covered by an Allstate policy. Three deaths resulted from the accident, and suits have been filed against Voyles by the other defendants named herein. Plaintiffs now argue that coverage had ceased at or before the date of the accident, and defendants urge that it continued through that date.

This court is of the opinion that a recapitulation of the facts involved will demonstrate that, considering the manifest confusion and lack of communication at Allstate, Voyles had made every possible effort to maintain his insurance coverage. He had secured automobile insurance from plaintiff, Policy No. 10425955–7–21, for one year, expiration date July 21, 1960. Witness Moore of plaintiff's regional office testified that the plaintiff customarily extended coverage seven to fourteen days after the stated expiration date, and that if payment had not been made by then a communication was made giving ten days notice of cancellation. On June 14th, five weeks *before* the stated expiration date, Allstate sent Voyles an insurance extension certificate, agreeing to extend the same coverage until July 21, 1961, at a premium of $194.50, $80.00 of which was to be due as the first payment.

On June 3rd, Voyles and his family had moved from St. Louis to Ellington, Missouri, a lower premium area. Desiring his "new" policy to reflect this and other changes, on July 29th, Voyles called Busch, an Allstate agent, on the telephone. Pursuant to their conversation, Busch executed and signed a company form (R42), Plaintiff's Exhibit 3, showing the change in address, an increase in bodily injury coverage from 15/30 on the "old" policy to 25/50, and, under the heading "SPECIAL INSTRUCTIONS," the notation "SEND NEW POLICY." Busch testified that there was no discussion of cost over the phone, but the court finds Voyles' testimony more worthy of belief, and he testified on cross-examination that on this first call the price of $85.00 was quoted.

The R42 was apparently channeled to the regional office in Kansas for processing. This resulted in the preparation of three documents, Plaintiff's Exhibits 4, 5 and 6. Exhibit 4, which Voyles testified that he received after the July 29th phone conversation, but before August 18th, showed a revised annual premium of $125.90, *not* the quoted or estimated $85.00. Exhibit 5, an endorsement representing a change in a policy, corroborated this figure, but Exhibit 6, the company's "Endorsement Worksheet," indicates a premium of $111.50 for Voyles' policy. There is nothing in evidence explaining the inconsistencies represented by the $85.00, $111.50 and $125.90 premiums. Of course, there was still another premium in Voyles' records, the $194.50 mentioned above, but the latter three resulted from his efforts to secure a few simple changes in his coverage and address.

In any event, having received the Exhibit 4 showing $125.90 and $53.40 due, Voyles called Allstate again regarding the amount of the premium, and he testified that again the $85.00 figure was verified. Then, sometime in August, he received notice of cancellation of his insurance as of August 16th, Plaintiff's Exhibit 8 (mailed August 4th, Plaintiff's Exhibit 9). The indicated reason for cancellation was for non-payment of an overdue pre-

mium of $80.00. Prior to this announced cancellation date, Voyles had been informed of at least three different premiums due.

After Voyles received the cancellation notice of August 16th, he went to St. Louis on August 18th in an effort to get his coverage straightened out. On this date he personally saw Busch in a St. Louis office, neither realizing that it was the other with whom he had conversed on July 29th.

Voyles testified convincingly that he told Busch his old policy had been cancelled and that he wanted new coverage. Allstate's witness Moore testified that his records show Voyles' request for 25/50 liability for bodily injury, 5/10 bodily injury benefit, and other coverage. Busch's testimony corroborates these two items as well as $10,000 property damage coverage. That the evidence is not clear as to other items of coverage is not important in this case. It is true that Busch denied that Voyles told him he wanted new coverage, but the court finds Voyles' testimony more credible. Busch does admit that he quoted a premium of approximately $85.00, the exact figure is unimportant. Voyles' recollection of the premium quoted is essentially the same, and Moore stated that such a figure does not appear in the records. The preponderance of evidence, however, does indicate that a premium of approximately $85.00 was quoted on August 18th, and there is complete agreement that Voyles remitted $34.00, or forty percent of the stated premium. Busch gave him a receipt for that amount and told him that he was covered and need not worry about his insurance any more, that he would get a *new* policy and bills or notices at the proper time for the balance of the payments, and that he might get a notice of cancellation from the company, but that he should ignore it as the office sometimes got mixed up in such transactions. This is a rather revealing observation on the part of plaintiff's employee, plainly confirming what all the other evidence so clearly shows.

The premiums of the "new" policy of August 18th were to be paid on the installment basis, a first payment of 40% was rendered and receipted, the remaining two of 30% each were never requested. On September 9th, plaintiff mailed notice of cancellation as of September 21st, indicating that cancellation was for non-payment of $19.40 of a premium due, apparently the difference between the $53.40 shown on Plaintiff's Exhibit 4 and the payment of $34.00 based on the $125.90 premium. This has been shown to be but one of four different premiums on Allstate's record on Voyles. In spite of this completely arbitrary crediting of the $34.00 and patent confusion in Allstate's records, plaintiff insists there was a valid cancellation and no coverage at the date of the accident. The court disagrees.

It is the court's finding and opinion that Voyles' transactions with Busch on August 18th were intended to and did give rise to a new contract of insurance, including as essential terms, (1) 25/50 for bodily injury liability, (2) 5/10 for bodily injury benefits, (3) $10,000 property coverage, (4) at a premium of $85.00 to be paid in three installments of 40%, 30% and 30%. This contract, albeit an oral one, is nonetheless valid and binding on the plaintiff and was never properly cancelled.

The general rule is stated in Couch on Insurance (2d), 26: 184, l. c. 33–34:

> "Ordinarily, it is within the power of an insurance agent to make an oral contract of insurance * * * unless the insured is, or should be held to be, appraised in some manner, either in the application or otherwise, that the insurance will not be in force until the application is approved at the home office and the policy is issued and delivered."

In the instant case a written application form was not used. The only written form, the R42 executed by Voyles on August 18, 1960, indicates no limits on the agent's authority, and in fact, it contains a blank to be checked by the

agent which "hereby binds the requested change" effective a specific date to be supplied by the agent, which was filled in by the agent as August 18, 1960. This gives a good indication of the authority of Allstate's agents generally. Nothing else in Voyles' transactions with Allstate would have provided notice of lack of authority on the agent's part to grant oral coverage, and Voyles, therefore, had a right to rely and did rely on his oral representation.

As stated in the Eighth Circuit case, Mass. Bonding & Ins. Co. v. R. E. Parsons Elec. Co., 8 Cir., 61 F.2d 264, at l. c. 272–73: "The exigencies of modern business require and justify reliance on oral agreements of insurance entered into by agents acting with apparent authority."

Particularly in point is the Missouri case, Voss v. American Mut. Liability Ins. Co., Mo.App., 341 S.W.2d 270, which, while holding for the insurer on other grounds, involved facts very similar to those in the instant case, and provides quite compelling authority for a holding in this case that the insurance company is bound. In the Voss case, on April 23, 1958, plaintiff informed the agent that she wanted a certain coverage, and he told her what the premium would be, accepted the initial payment and receipted it. He then assured plaintiff that she "had nothing to worry about; that she was covered then; and that she would have her policy in two weeks." (l. c. 272) The policy was not received and plaintiff's brother called about it, being assured that it was on the way. On May 26th an accident occurred, and the company informed plaintiff that her application was declined. The court, after reviewing all the evidence of the agent's authority to bind the company, determined that he had authority and that the company was bound.

Upon an analysis similar to that employed in the Voss case, supra, this court holds that Busch had authority to make an oral insurance contract binding upon plaintiff Allstate, and that he did make

such a contract, the terms of which are set out above.

Further, even if the court accepted plaintiff's theory (which it does not), that there was no new binding policy, the court is still of the opinion that there was no proper cancellation of coverage, whether denominated "new" or "old", and accordingly that there was coverage at the date of the accident.

The first notice of cancellation was sent on August 14th (Exhibits 8 and 9). The stated reason for cancellation at that time was that there was a failure to pay $80.00 past due on a policy premium. This "cancellation" notice was apparently based on the original insurance extension certificate premium of $194.50. At least five days before this notice was sent, defendant Voyles had ordered several changes which were accepted by the company, but such changes were not at that time reflected in the company's actions, because less than $80.00 would have been due under them. Even viewing the evidence most favorably for plaintiff, only $53.40 was due when the erroneous notice of cancellation was sent. Voyles admittedly did not pay this $80.00 part premium, and justifiably so, since he had ordered changes on which the *entire annual premium* was only $85.00.

The second notice of cancellation (Plaintiff's Exhibit 13), mailed September 9th (Plaintiff's Exhibit 14), indicates that cancellation is for failure to pay $19.40 past due on a policy premium. Again, the court has been unable to reconcile the figures in evidence, and to determine the computations utilized by the company in attempting to cancel. The various annual premiums which appeared in evidence through documents and testimony are $85.00, $111.50. Plaintiff's Exhibit 6), $125.90 (Plaintiff's Exhibit 4), and $194.50 (Plaintiff's Exhibit 2). It is agreed that $34.00 was remitted. Plaintiff's Exhibit 12, identified as "TERMINATION OF POLICY RECORD (NON-PAYMENT)", reflects this credit of $34.00, *but* shows a balance due of $93.40. Subtraction of the $34.00

credit from any or all of the above premiums will in no case yield a figure of $93.40 as balance due—another manifest error in Allstate's records, for which there is no explanation in evidence. The court questioned one Sanders, Account Division Manager for Allstate, in an effort to apprise itself of the figures used in determining cancellation of Voyles' policy. Sanders' response to this questioning was vacillating and inconsistent. He first indicated that the pro rata basis had been utilized. Under such basis, however, no matter what premium was used, $34.00 would have purchased coverage past the date of "cancellation." Confronted with this, Sanders said the short rate table was used, but such table was never entered into evidence for the court's edification. He further stated that when the short rate table was used the figure of $93.40 was used in conjunction with the figure $125.90. No explanation was made of where the figure $93.40 came from, and none is apparent, indicating the cancellation notice was based on figures not supported by the evidence. In short, the activities of the company, as constructed from the evidence, and the testimony of plaintiff's witnesses, are such as to show a poorly organized and ill-coordinated operation, at least in reference to the transactions before the court, and could and did utterly confuse Voyles, who had made repeated efforts to be covered by insurance.

It is a well known rule of law that where there is a provision for the cancellation of a policy of insurance embodied therein, in order to terminate the policy and coverage that provision must be strictly complied with. Farrar v. Mayabb, Mo.App., 326 S.W.2d 337, l. c. 340; Farmers Mut. Hail Ins. Co. v. W. H. Minton, Mo.App., 279 S.W.2d 523. The policy introduced into evidence has such a cancellation provision. Surely it cannot be argued in good faith that its provisions, especially regarding notice, have been strictly complied with, in view of the background of confusion and inaccuracy which has been recounted above. Defendant Voyles never had fair notice

of any attempted cancellation of his coverage with Allstate, and such coverage, therefore, continued in force throughout the date of the accident.

Accordingly, it is the holding of this court that plaintiff cannot prevail on its theories, and that it is the plaintiff's duty to afford coverage for Voyles and his automobile on the date of the accident in the amount of (1) 25/50 for bodily injury liability, (2) 5/10 for bodily injury benefits, and (3) $10,000 property coverage.

This opinion is adopted by the court as the findings of fact and conclusions of law, and the clerk will prepare a judgment to be entered by the court in accordance with the opinion.