**Albert DUPECK and Bessie Dupeck,**
**Appellants,**

**v.**

**UNION INSURANCE COMPANY OF**
**AMERICA, Appellee.**

**No. 17391.**

United States Court of Appeals
Eighth Circuit.

March 27, 1964.

As Amended on Denial of Rehearing
May 15, 1964.

Eugene H. Buder, St. Louis, Mo., made argument for appellant and Robert H. Jones, Kennett, Mo., was with him on the brief.

Edward F. O'Herin, Malden, Mo., made argument for appellee and filed brief with Veryl L. Riddle and James S. Newberry, of Riddle, O'Herin & Newberry, Malden, Mo.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

RIDGE, Circuit Judge.

This is an appeal from a judgment denying recovery on a policy of fire insurance because of claimed cancellation thereof by the insured prior to total destruction of the property by fire. Federal jurisdiction of this action was first premised in § 1332, Title 28, U.S.C.A. After removal, appellee filed answer and counterclaim in the nature of interplead-

er under §§ 1335, 1397 and 2361, Title 28, U.S.C.A., making one Charles R. Riggs a respondent thereto, because of a claim of double liability being asserted against it as a result of certain policies issued in the name of "Roger Riggs," covering the same property. The District Court entered judgment in favor of appellee and against appellants on their primary claim; and adjudicated in the interpleader action that Charles R. Riggs had no valid claim against appellee. Dupeck v. Union Insurance Company of America, et al., D.C.Mo., 216 F.Supp. 487. Appellants (plaintiffs in the primary action) only have perfected appeal therefrom.

The basic facts giving rise to this controversy are not substantially in dispute. The legal issues embraced thereby may be readily perceived. But, as District Judge Harper has noted, counsel for these parties may have made the ascertainment thereof difficult because "[t]he testimony in this case was lengthy due to much testimony dealing with many collateral issues which are of little significance other than perhaps reflecting on the credibility of the interpleader defendant Riggs." (1. c. 489 of 216 F. Supp.) Since the formative factual issues here to be considered are not in substantial dispute, we omit from this opinion discussion of "collateral issues" to which Judge Harper made reference in his memorandum opinion, supra; notwithstanding these parties refer thereto in briefs and argument made before us. We think Judge Harper was irrefutably right when he said there are certain "basic facts upon which this controversy must be decided." (216 F.Supp. 1. c. 489, supra.) For brevity's sake, we restate such facts as follows:

Sometime between June 1 and June 17, 1958, the Dupecks (appellants) acquired ownership of a building in Holcomb, Missouri, containing a drugstore and clinic, together with certain furniture and fixtures located therein. On June 17, 1958, appellee duly issued a standard policy of fire insurance to the Dupecks, insuring the building for $20,000.00 and the furniture and fixtures situate in the drugstore portion of the building for $5,000.00. One Richard Grages represented appellants in the acquirement of such property.[1] He also negotiated for the purchase of the insurance here in question. Mrs. Dupeck testified that although she authorized Grages to negotiate for and acquire the insurance issued in the name of the Dupecks, she did not tell him where to buy it. There is no evidence in the record of this case that any authorized agent of appellee ever had any personal business dealings with the Dupecks at any time. The first time the *broker* (McCluney) who acquired such insurance from appellee met Mrs. Dupeck was in March 1959, after the fire. However, there is no issue in this case as to the legal effectiveness of the policy issued by appellee to the Dupecks, insuring the property in question from June 17, 1958, to June 17, 1959; nor that the premium for such insurance was in fact paid by check from the Dupecks.

On October 2, 1958, Mr. and Mrs. Dupeck executed a general warranty deed transferring (as they then thought) all their right, title and interest in and to the real estate here considered to one "Roger Riggs" No conveyance of any kind was made by the Dupecks as to the personal property, i. e. the furniture and fixtures owned by them and situate in

1. Grages died prior to the trial of this case. At all times here considered appellant Albert Dupeck was in very poor health. He did not testify as a witness. The record before us is silent as to how the title of the Dupecks was held in respect to the property, real and personal, here involved. Mrs. Dupeck is established in the evidence as singularly carrying on all transactions with Richard R. Grages, deceased. There is no evidence that she was ever authorized to act for and on behalf of Mr. Dupeck, or was he ever consulted as to any matter, fact or circumstances here considered. The testimony is that Mr. and Mrs. Dupeck both signed the warranty deed transferring title to the real property in question to "Roger Riggs," and their execution thereof was acknowledged by Richard Grages, as a Notary Public.

the drugstore part of the building. It is undisputed that neither of the Dupecks ever knew or met Charles R. Riggs, interpleaded defendant, prior to the time of the fire here considered. Shortly thereafter Mrs. Dupeck did meet Charles R. Riggs, in a courtroom at Caruthersville, Missouri, during a hearing held in a divorce action as to which Riggs was a party. In the course of such hearing Riggs as a witness denied that he had ever purchased the property in Holcomb, Missouri, from the Dupecks and denied any right of ownership or interest therein. It was then that Mrs. Dupeck for the first time acquired knowledge that Charles R. Riggs was not the purchaser of the property, nor grantee named in the warranty deed executed by her and her husband, *ante*.

At the time the Dupecks executed the warranty deed conveying the real property in question, Mrs. Dupeck testified, she thought they were conveying the same to "Roger Riggs," otherwise unidentified, for a consideration stated in the deed as $28,500.00. That deed was dated October 2, 1958. Thereafter, that deed was entered of record in the Recorder's Office for Dunklin County, Missouri, on October 16, 1958, by some person unknown to the Recorder of Deeds.[2]

When Mrs. Dupeck delivered such deed to Grages she received from him $500.00 in cash. Two or three days later Grages delivered to her an unsecured promissory note in the sum of $28,000.00, purportedly signed by one "Roger Riggs." [3]

When Mrs. Dupeck delivered the deed to Grages, she also delivered to him the insurance policy here in suit, and an abstract of title to the real estate in question. She did not authorize Grages to cancel the insurance provided for in such policy. The same was delivered to Grages to take some information therefrom. It is Mrs. Dupeck's undisputed testimony that at that time she thought she had sold the property to one "Roger Riggs." Grages never told her he represented "Roger Riggs," named as grantee in such deed; and there is no evidence in the record before us that Grages, expressly or impliedly, was authorized to represent Charles R. Riggs, named as interpleader in this action, in that or any other transaction pertinent here. The District Court did not so find, nor did it undertake to make any determination that Grages was expressly or inferentially authorized by "Roger Riggs," grantee named in the warranty deed, *ante*, to accept delivery thereof or place the same

---

2. The stipulated evidence is that on October 16, 1958, Dick Grages filed in the Recorder's Office of Dunklin County, Missouri, a chattel mortgage from James Curry Bratton to R. Dick Grages; that on the same day he also filed in that office a chattel mortgage purported to be made by Roger Riggs to R. Dick Grages. Such mortgages were not made a part of the record in this case; and, the record is silent as to the personal property covered thereby. The only significance to be attached to that evidence is that Grages was thereby established as being in the Recorder's Office of Dunklin County, Missouri, on the same day that the warranty deed executed by the Dupecks was placed of record in that office.

Grages having been shown to have received the warranty deed from the Dupecks, and no evidence being adduced that he ever delivered such deed to Charles R. Riggs, or anyone else, a reasonable infer-

ence arises that Grages placed the warranty deed of record in the Recorder's Office of Dunklin County, Missouri, without acceptance by "Roger Riggs," the grantee named therein.

3. The testimony of a handwriting expert was to the effect that intervener, Charles R. Riggs, signed such promissory note. Mrs. Dupeck's testimony is to the effect that said note was delivered to her by Grages as payment of the balance due her in consideration for the warranty deed; but, there is nothing contained in the terms of such note to so identify the same; nor is that note otherwise related to the real or personal property here considered. It was not related to any deed of trust or chattel mortgage given as security therefor. In form it is a simple promissory note, with usual conditions incident to collection, notice, etc., in the event of default.

of record in the Recorder's Office for Dunklin County, Missouri.[4]

On October 8, 1958, certain policies of insurance aggregating $51,000.00 were written through the Mc's Insurance Agency, of Kennett, Missouri, affording coverage to one "Roger Riggs" for loss to the building here considered by fire, half of which amount was afforded coverage by appellee. Since we are not concerned in this appeal with any issue of recovery under such policies, we only note the issuance thereof and that Grages obtained that insurance through the above insurance agency by his dealing with C. C. McCluney; that Grages had been acquainted with Charles R. Riggs, interpleaded defendant in this action, for three years prior to the time here considered, and that McCluney did not meet Charles R. Riggs until the time of the trial of this case in the District Court. Also, that it was stipulated that Charles R. Riggs paid no portion of the premium for such other insurance and the policies issued therefor were all delivered to Dick Grages.

The Dupecks were residents of Steele, Missouri. The real and personal property here involved was situate in Holcomb, Missouri. McCluney, the broker who wrote the policies of insurance here involved, had offices at Kennett, Missouri. R. R. Grages, deceased, was established to be a "private detective." His residence is not disclosed by the record. Charles R. Riggs, defendant-interpleader, was a gynecologist and resident of Memphis, Shelby County, Tennessee. Concededly, Grages represented the Dupecks in the purchase of the property situated in Holcomb, and also to effectuate a sale thereof to one "Roger Riggs." That is all the record before us reveals as to the sale, transfer and delivery of the warranty deed to the real property here considered, by Grages' vi-

carious representation of the Dupecks, or anyone else, in that transaction.

Under the facts *ante,* we first determine whether there was any valid conveyance and transfer of title by the Dupecks to the real property here to be considered. The first matter to be noted is that the record in this case is silent as to any delivery of the warranty deed executed by the Dupecks to anyone other than Grages, the Dupecks' established agent. Intervener, Charles R. Riggs, by his testimony in this case specifically denied that the warranty deed executed by the Dupecks was ever delivered to him by Grages; or that he ever accepted the same or had anything to do with placing that deed of record in the Recorder's Office for Dunklin County, Missouri. There is no evidence *contra.* In his answer to the petition for interpleader he alleged and his testimony given at the trial of this case was, generally stated, to the effect:

"The respondent, Dr. Charles R. Riggs avers as set out in the counterclaim—that no insurance policies were issued to him in that he did not secure said insurance policies, nor did he authorize anyone to secure said policies, nor did he furnish any monies to secure said insurance policies, express or implied, and the said Dr. Charles R. Riggs did not make a claim for said insurance policies, nor did he authorize anyone to make a claim for said insurance policies, express or implied.

"* * * Dr. Charles R. Riggs * * * further avers that he is not guilty of any fraud, misrepresentation or false swearing in an application for said policies of insurance or any other policies of insurance; further, said Dr. Charles R. Riggs avers that he does not own the real property as set out by the Dupecks,

---

4. Dick Grages was not a Missouri-licensed "Real Estate Agent or Broker" within the ambit of Chap. 339, V.A.M.S., which provides a penalty for any person violating any provision thereof. § 339.170 V.A. M.S. The purpose of such legislation is to protect the public against fraud and incompetency in real estate transactions. See Gilbert v. Edwards, 276 S.W.2d 611 (Mo.App.); Franta v. Hodge, 302 S.W. 2d 291 (Mo.App.).

plaintiffs in this cause, in that he did not purchase said real property, nor did he authorize anyone to purchase the said real property, nor did he furnish any monies for the purchase of said real property, express or implied; furthermore, *there was no deed to said real property delivered to Dr. Charles R. Riggs, nor did he authorize anyone to register said deed or accept delivery of said deed.* (Emp. added.)

"Respondent, Dr. Charles R. Riggs further avers that he agrees with said defendant, Union Insurance Company of America, a corporation, as set out in paragraph 4 of their counterclaim, 'that the said Roger Riggs had no insurable interest in said real property and for the reason that the said Roger Riggs was not the owner of said real property.'

"Respondent, Dr. Charles R. Riggs further avers that he does not own the said real property and never did legally own the said real property, nor did he permit anyone, express or implied, to purchase said real property in question."

The only particle of evidence adduced before the District Court which may be considered somewhat contradictory to the facts above stated, is a letter introduced as an exhibit by appellee, addressed to it under date of October 20, 1958, reading as follows:

"Defendant's Exhibit D.
Arthur A. Cox, M. D.
Charles R. Riggs, M. D.
Obstetrics and Gynecology
1167 Madison Avenue
Memphis, Tennessee
October 20, 1958

Union Insurance of America, Inc.
804 Pine Street,
St. Louis, Missouri,
Dear Sir:

Re: Policys #
MOC 4763
MOC 4765

With reference to the above policys, dated Oct. 8, 1958, purchased thru

Mc's Insurance Agency, 124 Pine St., Kennett, Missouri.:

This is to advise you that about 4:30 A.M. on October 19, 1958, my buildings located in Holcomb, Mo., as described in the above policys and the entire contents of the buildings were destroyed by fire.

This loss has been reported to the agent and I am certain you will take prompt action in this matter.

Very truly yours,

/s/ C. Roger Riggs
C. Roger Riggs

CRR:bj
CC:
C. C. McCluney
R. R. Grages
File."

Charles R. Riggs, interpleaded defendant herein, denied any knowledge and all authenticity of such letter, except that it was written on his stationery. All that *appears contra* to such denial is the testimony of a "handwriting expert" attesting to the fact that Charles R. Riggs did in fact sign that letter and the promissory note delivered to appellants by Grages, *ante.*

Seemingly, it is because of the existence of those two documents and the manner by which the testimony in this case was presented to Judge Harper, that he was led to the conclusion (l. c. 490 of 216 F.Supp.):

"there was a valid conveyance of the real property (here considered) to Riggs and a loss of insurable interest by the Dupecks"

in such property. We say that such is the apparent basis for the above conclusion, because we find no other evidence in the record before us from which a legal transfer of title from the Dupecks to Charles R. Riggs can be inferred. As Judge Harper found:

"Riggs by his pleading effectively disclaimed any interest (in the real property), and failed to meet the claims pleaded by defendant (in its answer in the nature of interplead-

er). He has, in short, 'pleaded himself out of court.' His testimony and pleadings consistently and emphatically deny that he is making a claim under the policies purportedly issued to him, or that he has any right to make such a claim." (Pars. added) 216 F.Supp. l. c. 492, supra.

Hence the singular premise for the judgment entered in the case at bar, "that defendant is not liable to the interpleaded party Riggs on any of the policies issued by it and bearing Riggs' name" is wholly premised in the above-stated facts.

It is undisputed that no authorized agent of Charles R. Riggs, interpleaded defendant herein, ever had any personal dealings with the Dupecks. Appellee is not shown to have had any knowledge of the warranty deed executed by the Dupecks, or to have relied upon any conveyance made by them to "Roger Riggs" prior to the time of the fire. No contention is here made that any party to this action had any reasonable cause to believe that a delivery of the above warranty deed was ever made to the grantee named therein—or that the same ever had any valid existence prior to the fire. Hence the intention of the Dupecks as here established, alone controls the issue of conveyance of title to the real property here considered, absent evidence of delivery of the deed admittedly executed by them. "There is no surer way to find out what (these) parties meant, than to see what they have done" in respect to that transaction. Insurance Co. v. Dutcher, 95 U.S. 269, 273, 24 L.Ed. 410 (1877).

It is the law of the State of Missouri that to give delivery of a deed legal effect the grantor must have intended its delivery and the grantee named therein must have expressly or impliedly accepted it in its then executed condition. Powell v. Banks, 146 Mo. 620, 48 S.W. 664. Until acceptance of a deed by the grantee is established, the delivery is not complete, and without such showing the deed does not take effect; (McCune v. Goodwillie, 204 Mo. 306, 102

S.W. 997 (1907); Weigel v. Wood, 355 Mo. 11, 194 S.W. 40 (1946)); "it is a mere dead scroll." Chambers v. Chambers, 227 Mo. 262, 127 S.W. 86, 91 (Mo. 1910). True, a grantee may ratify conveyance by acts done subsequent to delivery (Jones v. Jefferson, 334 Mo. 606, 66 S.W.2d 555 (1933); but, there is no evidence here from which it may be inferred that by any act of Charles R. Riggs, (the interpleaded defendant) he can be considered as having accepted delivery of the deed in question. He specifically repudiated any such delivery. The mere recording of such deed under the circumstances here established is not constructive notice of acceptance by "Roger Riggs" *sans* some other manifestation of conduct on his part. Cf. Cook v. Newby, 213 Mo. 471, 112 S.W. 272 (1908); Shields v. McClure, 75 Mo. App. 631 (1898); Llewellyn v. Butler, 186 Mo.App. 525, 172 S.W. 413 (1915). Fortifying authority is not necessary to sustain the proposition that upon Charles R. Riggs' denial that he was the purchaser of the Dupeck property; and that he made no claim of right, title or interest therein—without more,—under the pleadings and proof here made—the Dupecks had the absolute right to repudiate the transaction in question and in equity were entitled to have the warranty deed expunged from the record. In the meantime, i. e. from the time of their execution and delivery of the warranty deed to Grages, the Dupecks remained owners of the property in question and as such had insurable interest therein at the time of its total destruction by fire—*sans* any evidence of delivery and acceptance of that deed to a grantee who could or did make claim thereunder.

It must be kept in mind, there is no fraud here charged by appellee on the part of the Dupecks or anyone else. Nor can any fraud be inferred so as to deprive the Dupecks of the insurable interest here claimed by them. That a transfer of title was not accomplished by the Dupecks, by what is here established, can be of no concern to respondent so far

as insurable interest claimed by the Dupecks is here involved.

By his finding of fact, Judge Harper found that:

"It is rather clear, and quite regrettable, that Grages did not deal in good faith with Mrs. Dupeck, and in fact secured the insurance policy (from her) for a purpose other than that represented." 216 F.Supp., at 490.

██ In the light of the findings of fact here made and the record before us as a whole, the only inference to be made is that Dick Grages placed the warranty deed hereinabove considered of record in the Recorder's Office for Dunklin County, Missouri, without authority of any person named a party therein. In the light of Charles R. Riggs' disclaimer of acceptance of such deed, or any right, title or interest in the property intended to be conveyed to him thereby, we think the District Court should have found and so framed its decree in this action as to declare that the warranty deed executed by the Dupecks was invalid, null and void, and insufficient to establish any valid conveyance of the property therein described to "Charles R. Riggs," interpleaded defendant herein as claimed by appellee. Charles R. Riggs having been made a party to this action, equitable in nature, the Dupecks should have been relieved of the consequences of Grages' recording of that conveyance. Public Utilities Commission of Ohio v. United Fuel Gas Co., 317 U.S. 456, l. c. 466, 63 S.Ct. 369, 87 L.Ed. 396 (1943). Aside from Charles R. Riggs, no other party to this action could claim a valid transfer of title out of the Dupecks and into Charles R. Riggs, absent a claim of fraud. There was no such claim here made.

## CANCELLATION

██ Appellee by its answer and counterclaim admitted issuance of the policy of insurance to the Dupecks for a term from June 17, 1958, to June 17, 1959, and payment of premium therefor; but alleged that the same was surrendered and cancelled by it at the request of the Du-

pecks "prior to time of the fire on October 19, 1958."

All that appears in the record before us as to cancellation of the Dupecks' policy is this: All the policies of insurance here considered were issued through "Mc's Insurance Agency," Kennett, Missouri, operated by one C. C. McCluney. McCluney, as a witness, testified that it was Dick Grages, deceased, who procured the issuance of all such insurance. There is no question but that Grages did represent the Dupecks in securing their insurance; but Charles R. Riggs averred and his testimony was to the effect "that no insurance policies were issued to him" by appellee, "that he did not secure said insurance policies, nor did he authorize anyone to secure (any) policies" of insurance for him from appellee or any other company. There is no evidence in this record that Charles R. Riggs had any knowledge of the issuance of any insurance in the name of "Roger Riggs" prior to the time of the fire here considered.

Dick Grages was deceased at the time of trial of this case; consequently, McCluney's testimony was accordingly limited by the District Court "to what happened when Grages brought the policy into his office, rather than what Grages said." McCluney testified, Dick Grages brought the Dupecks' policy to his (McCluney's) office on October 18, 1958. He fixed that date from a letter which he wrote to Union Insurance Company of America, addressed to 408 Pine Street, St. Louis, Missouri, as follows:

"Dear Sir:          October 18, 1958

We are returning Pol.# MOC 2585 made out to Albert Dupeck and Bessie Dupeck, his wife, or to survivor, Route #2, Steele, Missouri, *for* cancellation, as I requested by telephone in our conversation this week. (Emp. added.)

Very truly yours,

CCM/bp          C. C. McCluney"

Admittedly, *that* letter *could not have been received by the addressee (appellee)*

before Monday, October 20, 1958, after the fire.[5]

The only inference to be made from the record is that McCluney was not an "authorized—broker to effect cancellation" of insurance policies issued by appellee, for Judge Harper stated: "The defendant insurance company has not relied on the mere fact that the *broker* who took out the insurance *presents* it for cancellation, but upon the fact that he (the broker) has been authorized to do so by the apparent agent of the insured." (Par. & emp. added.) Judge Harper further found:

> "Here, Mrs. Dupeck, through Grages, *her agent* with apparent authority to secure cancellation, has communicated the *desire* to cancel. Plaintiffs' Exhibit 1, a letter by McCluney (infra) to defendant, is dated one day before the fire, and relates a return of the policy for cancellation 'as I requested by telephone in our conversation this week.' It is clear that the *desire* of insured to have the policy cancelled had been related to the defendant *before the fire,* and in a manner upon which the insurer had a right to rely." (Par. & emp. added.)

Appellee does not here contend and, therefore, did not undertake to establish at the trial of this case, any relationship between it and McCluney to accept cancellation of policies of insurance issued by it. There are no facts from which it can be inferred that the Dupecks, by act, word or deed, ostensibly authorized McCluney to act as their agent to cancel their insurance. Appellee's contention is contra. It is that Grages alone had ostensible authority to act for them.

However, appellee argues that there was a cancellation of the Dupecks' insurance on October 8, 1958, by Grages. Seemingly, appellee relies on the fact that because McCluney undertook to insure the destroyed property in the name of "Roger Riggs" under date of October 8, 1958; and McCluney received $100.00 from Grages on October 17, 1958, as partial payment of premium for the insurance coverage afforded "Roger Riggs", commencing under date of October 8, 1958; that such is sufficient evidence to establish that the Dupecks' policy was cancelled on that date, or at least before the fire. The only premise in this record for such supposition is that McCluney testified that he was not sure of the date "he cancelled the policy" by telephoning defendant's office, but he believed it was on October 8, 1958, because he would not have issued new insurance on the property in question without cancelling the Dupecks' insurance.

Such is the state of the proof in this case as to cancellation. We do not know, and under the law it cannot now be ascertained, what conversation, if any, Grages had with McCluney on October 8, 1958, which conversation would be the only possible source of evidence as to any claimed cancellation of the Dupecks' policy prior to the destruction of the property by fire, as here considered. Grages is dead. The law closes McCluney's lips as to that incident. All we can legally notice is that Grages delivered Dupecks' policy to McCluney on October 18, 1958. McCluney, as a *broker,* had no power from appellee to accept and cancel the Dupecks' policy at that time. As a broker of the insurance, McCluney wrote the letter of October 18, 1958, *ante,* and mailed it, together with the policy, to appellee's St. Louis office. Dupecks' request for cancellation, if they can be held to such conduct, by any ostensible au-

---

5. "Received" stamps appearing on the face and other parts of such policy reveal receipt thereof, presumably by appellee, on "October 24, 1958" and under date of "October 30, 1958." Other "Received" stamps appearing thereon by "Missouri Audit Bureau, St. Louis" appear with dates of "October 22, 1958" and "October 29, 1958." In formal parts of the policy under "Date of Cancellation," with headings of "Year-Month" and "Date" appears "1958–10–8." The evidence here is that appellee issued policies of insurance in the name of "Roger Riggs" under date of October 8, 1958, but no such policies appear as exhibits in the record of this case.

thority vested in Grages or McCluney, remained so far as the facts here reveal uncommunicated to appellee or any agent authorized by it to effect cancellation, until McCluney's letter was delivered on October 20, 1958. As said in Appleman, Insurance Law and Practice, Vol. 6, p. 797:

"A request for cancellation does not take effect until received by the insurer, * * * or by his agent authorized to receive the same."

A provision in a policy of insurance for cancellation thereof by either party is binding and must be strictly complied with in order to terminate the policy. Dyche v. Bostian, Mo.App., 229 S.W.2d 25, affirmed 361 Mo. 122, 233 S.W.2d 721; Allstate Insurance Company v. Martin, D.C.Mo., 209 F.Supp. 259. True:

"(T)he delivery of a request for cancellation to the insurer's authorized agent terminate(s) the policy although the general agent did not receive the policy until after the loss." Appleman, supra, 799.

But, McCluney is not shown to have been an authorized agent of appellee, with authority to cancel policies of insurance. The only inference to be made from the record here is *contra* as to the existence of any such agency. "Some action on the part of the insurer is necessary to convert a broker into an agent for the insurer." Appleman, Insurance Law and Practice, Vol. 16, Supp., p. 33, § 8731, citing H & H Mfg. Co. v. Cimarron Ins. Co., 302 S.W.2d 39 (Mo.App.). There is no presumption that a broker employed to procure insurance has authority after delivery of the policy to receive a notice of cancellation. Appleman, infra, Vol. 6, p. 739, § 4187, and cases there cited.

It was upon the above "conclusions as to the facts and law" that Judge Harper ruled "plaintiffs (Dupecks) must be held to no recovery on the insurance policy (duly issued to them by appellee) on either the building or the fixtures and furniture therein."

Appellee asserts that such finding of fact as to cancellation must be sustained, because, as the District Court stated:

"The sole requirement to effect cancellation by the insured *is a definite and unconditional request for cancellation actually communicated to the Company.* Vol. III, Richards on Insurance, Sec. 532, l. c. 1765." (Emp. added.)

We may accept that to be a correct statement of applicable Missouri law which is controlling here. But every question of applicable law must arise out of a fact situation. As said in Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919): " * * * the character of every act depends upon the circumstances in which it is done."

There being no conflict in the evidence as to how these parties acted at the time appellee claims appellants' policy of insurance was cancelled, that issue was one of law, for determination by the District Court, and reviewable as such by this Court. Cf. Spann v. Commercial Standard Insurance Company of Dallas, Texas, 82 F.2d 593 (8 Cir. 1936). The burden of proof was upon appellee to prove a valid cancellation of the Dupecks' insurance, as well as the scope of authority of Grages and McCluney to legally effect "cancellation." Cf. Shain v. Washington National Insurance Company, 308 F.2d 611 (8 Cir. 1962); Clark v. Employers Mutual Casualty Company of Des Moines, Iowa, 90 F.2d 667 (8 Cir. 1937). As said in the Spann case, supra:

"An agent has no implied authority 'to do acts not incidental to the transaction, nor usually done in connection therewith nor reasonably necessary.' American Law Institute's Restatement of the Law of Agency, § 35, comment a. In accord with this proposition, it is generally held that the authority to procure insurance does not of itself carry with it the authority to effectuate a cancellation of the policy thus procured." 82 F.2d l. c. 597.

558

McCluney's testimony that cancellation of the Dupecks' policy was effective on October 8, 1958, is singularly premised on his self-serving, stated fact; that he would not have written new insurance policies in the name of Roger Riggs, aggregating $51,000.00 coverage, part of which was retained by appellee, without having given cancellation notice of the Dupecks' policies to appellee. That Grages requested McCluney to obtain $51,000.00 insurance on the property in question in the name of "Roger Riggs," is no evidence of Grages' ostensible authority to effect cancellation of the Dupecks' policy.

Reversed and remanded, with directions to enter judgment in favor of appellants and against appellee for the amount of the "Building Coverage" afforded by the policy of insurance here in suit; and

Grant appellants a new trial in respect to the issue as to value of the personal property, if any, damaged or destroyed by the fire in question; and

Enter judgment accordingly in favor of appellants for the total of all such damages.